# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

PATRICK AKERLUND, ET AL.,

 *Plaintiffs – Appellants,*

v.

ATLAS AIR, INC., ET AL.,

 *Defendants – Appellees.*

**Appeal From the United State District Court
For the Southern District of Florida
Case No. 1:22-cv-23519-KMM
The Honorable Judge K. Michael Moore**

**BRIEF OF PLAINTIFFS-APPELLANTS,
PATRICK AKERLUND, ET AL.,**

**ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
411 N Donnelly Street, Suite 313
Mount Dora, FL 32757
T: (352) 455-2928
anthony@sabatinilegal.com**

**Andrew M. Green
JOHN PIERCE LAW P.C.
(*Pro Hac Vice* for Oral Argument Pending)
21550 W. Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
(516) 474-4278
andrew@johnpiercelaw.com
Attorney for *Plaintiffs–Appellants***

**TABLE OF CONTENTS**

Page

TABLE OF CONTNETS ............................................................. ii

TABLE OF CITATIONS ............................................................ iii

JURISDICTIONAL STATEMENT ............................................... 10

STATEMENT OF THE ISSUES ................................................. 10

STATEMENT OF THE CASE ................................................... 11

SUMMARY OF ARGUMENT ................................................... 18

ARGUMENT ......................................................................... 19

    A Standard of Review ..................................................... 19

CONCLUSION ....................................................................... 58

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7),

FRAP RULE 32(g) and CR 32(c) ...............................................

PROOF OF SERVICE ...............................................................

CIRCUIT RULE 30(d) STATEMENT ...........................................

# TABLE OF CITATIONS

**Page(s)**

**CASES**

*Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250 (11th Cir. 2014) . . . . . . . . .48

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970) . . . . . . . . . . . . . . . . . . . .49

*Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) . . . . . . . . . . . . . . . . . . . . . . . 56

*Allstate Insurance Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) . . . . . . . . . . 43

*Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987) . . . . . 26, 34

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) . . . . . . . . .19, 39, 44, 48, 51, 53, 54, 57

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 396 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 51

*Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020) . . . . . . . . . . . . . . . . . .47

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 352 (2001) . . . . . . . .57

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) . . . . . . . . . . . . 25, 28, 33

*Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961) . . . . . . . . . . .50

*Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989) . . . . .39, 44

*Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 26

*Champion v. Gray*, 478 So. 2d 17, 20 (Fla. 1985) (SAC ¶ 162) . . . . . . . . . . . . . .52

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

*City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996) . . . . . . . . . . . .53

*Clay Electric Cooperative, Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) . . 53

*Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. 3d DCA 1998) . . . . . . . . . . . . . . . .52

*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001) . . . . . . . . . . . . 51

*Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) . . . . . . . 51

*Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014) . . . . . . . . . . . . . . . . . . . . .20

*Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Doe v. Roe*, 638 So. 2d 87, 88 (Fla. 4th DCA 1994) . . . . . . . . . . . . . . . . . . . . . . .41

*Doe v. Rumsfeld*, 2005 WL 1124589 (D.D.C. Apr. 6, 2005) . . . . . . . . . . . 55, 57, 58

*Doe v. University of Miami*, 2020 WL 7647634, at *6 (S.D. Fla. Dec. 23, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

*Dominguez v. Equitable Life Assurance Society*, 438 So. 2d 58, 61 (Fla. 3d DCA 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .52

*Draper v. United Airlines, Inc.*, No. 22-cv-02985, 2023 WL 3002478 (D. Colo. Apr. 19, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .58

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015) . . . . . . . .46

*Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .49

*Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 24

*Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 35

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011) . . .23

*Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . .42

*Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) . . . . . . . . . . . . . . . . . . . . . .52, 53

*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) . . . . . . . . . . . . . . . . . . . . . . . . .51

*Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) . . . . . . . .48

*Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) . . . . . . . . .58

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

*Harms v. Miami Daily News, Inc.*, 127 So. 2d 715, 717 (Fla. 3d DCA 1961) . . . . 42

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) . . . . . . . . . . . . . . . . . 45, 48

*Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990) . . . 43

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24, 26, 35

*Henson v. City of Dundee*, 682 F.2d 897, 903 (11th Cir. 1982) . . . . . . . . . . . . . . 47

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) . . . . . . . . . . 20, 28

*Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905) . . . . . . . . . . . . . . . . . . . . . . . .51

*Jewell v. New York Life Insurance Co.*, 2018 WL 1792348, at *4 (M.D. Fla. Apr. 16, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

*Johnson v. Thigpen*, 788 So. 2d 410, 413 (Fla. 1st DCA 2001) . . . . . . . . . . . . . .52

*Katz v. United States*, 389 U.S. 347, 351 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) . . . . . . . . . . . . . . . .27

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) . . . . . . . . . . . . . . . .35

*Koutsouradis v. Delta Air Lines, Inc.*, 427 So. 2d 1105, 1107 (Fla. 3d DCA 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .52

*Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008) . . . . . . . . . . . 27, 32

*Lofton v. Kravitz*, 672 So. 2d 591, 593 (Fla. 4th DCA 1996) . . . . . . . . . . . . . . . .43

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28, 30

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) . . . . . . . . . . . . . . . . . 49

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) . . 50

*Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .55, 56

*McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992) . . . . . . . . . . . . 53

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) . . . . . . . . . . . . 48

*Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .52

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) . . .47, 48

*Morrissette-Brown v. Mobile Infirmary Medical Center*, 506 F.3d 1317, 1321 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*NFIB v. OSHA*, 142 S. Ct. 661 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) . . 31

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-48 (1952) . .20, 22

*Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) . . . . . . . . . . . . . . . 39

*Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) . . . . . . 37, 38

*Rapp v. Jews for Jesus, Inc.*, 944 So. 2d 460, 462 (Fla. 4th DCA 2006) . . . . . . . . 44

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) . . . . . . 49

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th Cir. 2010) . . .47

*Regions Bank v. Kaplan*, 2021 WL 4852268, at *13 (11th Cir. 2021) . . . . . . . . .41

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) . . . . . . 58

*Romer v. Evans*, 517 U.S. 620, 631 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .50

*Ross v. Blake*, 578 U.S. 632, 639 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299, 305 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989) . . . . . . . . 50

*Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006) . . . . . . . . . . . . . . . 37

*Spilfogel v. Fox Broadcasting Co.*, 792 So. 2d 1254, 1256 (Fla. 4th DCA 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*State v. Johnson*, 814 So. 2d 390, 393 (Fla. 2002) . . . . . . . . . . . . . . . . . . . . . . . .43

*Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991) . . . . . . . . . .44

*Stokes v. Liberty Mutual Insurance Co.*, 213 So. 2d 695, 697 (Fla. 1968) . . . . . . .54

*Stubbs v. Wyndham Nassau Resort*, 447 F.3d 1357, 1360 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 24, 36, 38

*Tillery v. ATSI, Inc.*, 2005 WL 81628, at *3 (11th Cir. Jan. 14, 2005) . . . . . . . . .46

*Times Publishing Co. v. Williams*, 222 So. 2d 470, 475 (Fla. 2d DCA 1969) . . . . 44

*United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009) . . . . .38

*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009) . . . . . . . .19

*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009) . . . . . . . .36

*Vance v. Ball State University*, 570 U.S. 421, 428 (2013) . . . . . . . . . . . . . . . . . . 48

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317-18 (11th Cir. 2018) . . . . . . . 22

*Walden v. Fiore*, 571 U.S. 277, 285 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Walden v. Fiore*, 571 U.S. 277, 285 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Washington v. Harper*, 494 U.S. 210, 221 (1990) . . . . . . . . . . . . . . . . . . . . . . . . 50

*Weaver v. Myers*, 229 So. 3d 1118, 1127 (Fla. 2017) . . . . . . . . . . . . . . . . . . . . . .43

*Weinstein v. City of North Bay Village*, 977 So. 2d 703, 706 (Fla. 3d DCA 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .53

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991) . . . . . . . 41

*Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007) . . . . . . . . . .51

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) . . . . . .25, 34

*Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . .50

*Zell v. Meek*, 665 So. 2d 1048, 1050 (Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 53

**STATUTES**

21 U.S.C. § 337(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

21 U.S.C. § 360bbb-3(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .54, 56, 57

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

42 U.S.C. § 2000e-2(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fla. Stat. § 48.193(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

Fla. Stat. § 48.193(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291 over the appeal from the district court's March 19, 2024, order dismissing the Third Amended Complaint (TAC) with prejudice and entering final judgment (ECF Nos. 88, 89). The notice of appeal was filed on April 3, 2024, within 30 days per Fed. R. App. P. 4(a)(1)(A) (ECF No. 90). The district court had jurisdiction under 28 U.S.C. §§ 1331 (federal claims) and 1367 (state claims), with venue proper under 28 U.S.C. § 1391(b)(2) (TAC ¶¶ 22-24).

# STATEMENT OF THE ISSUES

1. Did the district court err in dismissing all claims against Flight Services International, LLC (FSI) and most against Atlas Air, Inc. (Atlas Air) for lack of personal jurisdiction under Rule 12(b)(2), despite the TAC's detailed allegations of their systemic operations at the Miami Training Center (MTC) and the direct nexus between those Florida-based activities and Plaintiffs' injuries (TAC ¶¶ 17-20, 23-24)?

2. Did the district court err in dismissing the remaining claims against Atlas Air for failure to state a claim under Rule 12(b)(6), when the TAC provides extensive factual allegations plausibly supporting invasion of privacy, hostile work environment under Title VII, constitutional violations under 42 U.S.C. § 1983 or *Bivens*, intentional and negligent infliction of emotional distress,

negligence, and violation of the Emergency Use Authorization (EUA) statute, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) (TAC ¶¶ 93-256)?

## STATEMENT OF THE CASE

### A. Factual Background

Plaintiffs-Appellants are 89 current or former employees of Defendants-Appellees Atlas Air, Inc., a Delaware corporation headquartered in Purchase, New York, and Flight Services International, LLC, a Texas limited liability company based in Houston, Texas (TAC ¶¶ 16, 20). These Plaintiffs, categorized into four distinct groups, assert that Defendants implemented and enforced COVID-19 vaccination, testing, and masking policies at Atlas Air's Miami Training Center (MTC), located at 5600 NW 36th St., Miami, FL 33166, violating their legal rights, including privacy, religious freedom, equal protection, due process, freedom from emotional distress, negligence, and rights under the EUA statute (TAC ¶¶ 1-9, 17). The MTC, a 30,000-square-foot facility operational since Atlas Air's inception, trains over 10,000 pilots, flight engineers, flight attendants, and other aviation professionals annually—Atlas Air's entire pilot workforce and all FSI flight attendants—making it the epicenter of Defendants' alleged misconduct (TAC ¶¶ 17-18, 20). The TAC alleges these Florida-rooted policies caused tangible harms—discrimination, harassment, public disclosure of private health information (PHI),

11

emotional distress, economic losses, and coercion into experimental medical products—across all 89 Plaintiffs, divided as follows:

- Category 1: 65 unvaccinated Atlas Air pilots, including Patrick Akerlund, Michael Alzati, Eric W. Anderson, Larry James Bearce Jr., Robert Bellman, Benjamin Bendiburg, Gregory Berry, Lynette Botha, Caleb Buehrer, Richard Bullock, Jon Carroll, Vergil Caskey, James Castor, Nathan Charboneau, Shawn Churchel, Joel Colon, Mark Connor, Matthew Cronauer, Fred Cunningham, Royal Danza, Elliot De Sousa, Eric Desandro, Steve Dixon, James Erickson, Luis Esquivia, Lee Estes, Robert Fratti, Dennis Gebhard, Mark Gilman, Robert Giudice, Eric Gordon, Rexford T. Heivilin, Jason Henning, David Hewson III, Todd Hontz, Daniel Hudson, Roger Justice, Venancius Kassandji, John Kearins, Beth Kirby, Joseph Loschiavo, Andrew Lutz, Blythe Lutz, Rafael Macario, Jeffrey Michonski, Andrew Mickler, Corey Morris, Gregory Myers, Peter Napora, Patrick Phillips, Glen Pronk, Charles Randall, Jason Rogers, William Serritella, Gentry Shelton, Todd Snaza, Donald Sorrentino, Mark South, Michael Stark, Forrest Stowells, John Swift, Nick Taylor, William Thompson, James Villella, and Farshad Zarrabian (TAC ¶ 12). These pilots allege hostile workplace harassment, invasion of privacy, discrimination, and retaliation for refusing vaccination,

including denial of flight opportunities and public identification via masks (TAC ¶ 12).

- Category 2: 13 vaccinated Atlas Air pilots, including Michael G. Ballard Jr., Jason Frisbie, Tony Gamboa, Reza Ghods, Ricky Kinder, Andreas N. Koustas, Chad Kravetz, Carl Lindberg, April McQuillen, Christopher McQuillen, Peter Raymond, Joshua Roberts, and Gustavo Verdes (TAC ¶ 13). These pilots allege coercion into vaccination despite religious objections, resulting in adverse health effects—some reported to the Vaccine Adverse Event Reporting System (VAERS)—and ongoing harassment (TAC ¶ 13).

- Category 3: 6 unvaccinated Atlas Air ground employees, including Timothy Frye, Douglas P. Mayo Jr., Joel Pardo, Lance Phillips, Kimberly Schreck, and Brandon Thoroughman (TAC ¶ 14). These employees allege similar harassment, privacy invasions, and threats of termination for refusing vaccination (TAC ¶ 14).

- Category 4: 5 unvaccinated FSI flight attendants, including Rebecca Robertson, Elizabeth Stoneking, Barbara Janeice Surber, Geri Tonda, and Ricardo Torres Abarca (TAC ¶ 15). These attendants allege hostile

workplace conditions, privacy violations, and discrimination enforced at the MTC, where all FSI training occurs (TAC ¶ 15).

Atlas Air operates the MTC as its sole training facility, described as having a "massive presence" with "more pilots in a day than any base or station on the globe," training over 10,000 aviation professionals annually across its 30,000 square feet, equipped with six flight simulation training devices (TAC ¶¶ 17-18). The TAC alleges that ceasing MTC operations would "cause a significant and detrimental impact on the operations of Atlas worldwide," hosting critical departments like Dangerous Goods, Special Loads, and Ground Operations Training, overseen by the Vice President of Ground Operations, whose primary office is there (TAC ¶¶ 18-19). Pilots spend minimal time at the New York headquarters, with the MTC as their operational base, a fact Atlas Air publicizes as the "first stop" for new pilots and a "world-class Training Center" (TAC ¶ 17 n.2). FSI, whose "exclusive business" is contracting flight attendants to Atlas Air, conducts all training at the MTC, maintaining a "significant presence" of personnel for annual or biannual sessions, earning "millions in dollars" from this Florida-based arrangement (TAC ¶ 20). Founded by an Atlas Air contract attorney and his spouse, FSI's operational lifeline ties it to the MTC (TAC ¶ 20).

The TAC details Defendants' policies, initiated on October 5, 2021, when Atlas Air emailed over 4,000 employees, mandating full vaccination by December

8, 2021, pursuant to Executive Order 14042 (EO 14042), signed September 9, 2021 (TAC ¶¶ 60, 64; 86 Fed. Reg. 50,985-88). On October 11, 2021, Defendants offered medical or religious exemptions by October 22, 2021, and required status reports by November 25, 2021, promising confidentiality (TAC ¶¶ 64-67). Instead, Atlas Air disseminated Plaintiffs' last names, employee numbers, and vaccination status company-wide from the MTC, linked to flight assignments, and forced unvaccinated Plaintiffs to wear masks—"political symbols" that "amplified" their PHI—during MTC training, despite knowing by September 2021 that masks were "useless" against COVID-19 (TAC ¶¶ 5, 65, 78, 95). FSI mirrored this, with President Joni French offering vaccinated attendants five hours' extra pay in September 2021, pressuring Category 4's Rebecca Robertson and Elizabeth Stoneking (TAC ¶ 68). Post-NFIB v. OSHA, 142 S. Ct. 661 (2022), Defendants shifted to a company-directed mandate, enforcing vaccination, testing, and masking despite injunctions, via "lockstep" collaboration with federal officials (TAC ¶¶ 73-74, 134).

These policies targeted Plaintiffs' religious beliefs against mRNA vaccines—"Virus-Based Gene Therapies" (VBGTs) that "hijack" cells, violating their "God-given genetic code" (TAC ¶¶ 46-51, 58)—and EUA products lacking informed consent (TAC ¶¶ 249-256). Category 1's Caleb Buehrer and Richard Bullock faced "severe and persistent pressure," "Anti-Vaxxer" slurs, and lost flight

bids (TAC ¶¶ 81, 110(ii)-(iv)). Category 2's Michael G. Ballard Jr. and Reza Ghods suffered adverse effects, one grounded (TAC ¶¶ 13, 126). Category 3's Timothy Frye and Joel Pardo endured threats (TAC ¶ 14). James Villella's 2022 "Article 19" hearing and desk reassignment exemplify retaliation (TAC ¶ 80). Defendants' EUA violations forced Plaintiffs to accept experimental products or face termination, lacking options to refuse without penalty (TAC ¶¶ 249-255).

**B. Procedural History**

This action commenced on September 1, 2022, in the U.S. District Court for the Southern District of Florida against Atlas Air and FSI, alleging violations from Defendants' COVID-19 policies (Case No. 1:22-cv-23519-KMM). Assigned to Judge K. Michael Moore and Magistrate Judge Lauren F. Louis, it sought a jury trial (TAC at 1). On November 15, 2022, Plaintiffs filed the First Amended Complaint (FAC), expanding claims to include invasion of privacy, Title VII hostile work environment, constitutional violations, emotional distress, and negligence (ECF No. [39]). Defendants moved to dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6), asserting limited Florida contacts and arbitration clauses (ECF No. [43]).

On February 28, 2023, the district court dismissed the FAC without prejudice as a shotgun pleading under Fed. R. Civ. P. 8(a)(2) and *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015), granting

30 days to amend (ECF No. 59). Plaintiffs filed the Second Amended Complaint (SAC) on July 19, 2023, alleging ten counts: Counts I-V against Atlas Air (invasion of privacy, Title VII, § 1983/Bivens, IIED/NIED, negligence) for Categories 1-3, and Counts VI-X against FSI (same) for Category 4 (ECF No. 63). Defendants moved to dismiss on August 2, 2023, citing lack of jurisdiction and failure to state claims (ECF No. 66). Plaintiffs opposed on August 23, 2023, with affidavits from Mark South and James Villella (ECF Nos. 69-1, 69-3). On September 20, 2023, the court dismissed the SAC without prejudice, finding no personal jurisdiction over FSI or non-Florida Atlas Air claims, no plausible claims for Counts I-V, and no need for discovery (ECF No. 73).

Plaintiffs filed the Third Amended Complaint (TAC) on October 11, 2023, adding Count XI (violation of 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III)) against both Defendants, alleging EUA violations (ECF No. 74). The TAC otherwise mirrored the SAC (ECF No. 75 at 1). Defendants stipulated that FSI need not respond, and Atlas Air need not address Counts I-X (ECF No. 79-1). Atlas Air moved to dismiss the TAC on November 1, 2023 (ECF No. 81), arguing lack of jurisdiction for non-Florida Plaintiffs and no private right of action under the FDCA (ECF No. 81 at 4-10). Plaintiffs opposed (ECF No. 83), and Atlas Air replied (ECF No. 85). On March 19, 2024, the court granted the motion, dismissing the TAC with prejudice, finding no jurisdiction over FSI or non-Florida Atlas Air claims, no plausible

claims for Counts I-V, and no private FDCA action for Count XI (ECF No. 88).

Final judgment was entered the same day (ECF No. 89). Plaintiffs appealed on

April 3, 2024 (ECF No, 90), within 30 days, seeking reversal.

## SUMMARY OF ARGUMENT

The district court's dismissal of the TAC under Rules 12(b)(2) and 12(b)(6)

constitutes reversible error on two grounds. First, it erred in finding no personal

jurisdiction over FSI and most Atlas Air claims, despite the TAC's robust

allegations of systemic MTC operations (TAC ¶¶ 17-20, 23-24). General

jurisdiction exists over both Defendants, as Atlas Air trains all 10,000+ employees

at the MTC—a critical hub whose cessation would impair global operations—and

FSI conducts all training there, earning "millions" (TAC ¶¶ 17-20). Specific

jurisdiction applies, as all claims—privacy invasions, discrimination, EUA

violations—arise from MTC-enforced policies (TAC ¶¶ 23, 65, 95, 249). The

court's denial of discovery despite affidavit conflicts further erred (ECF No. 88 at

4).

Second, the court erred in dismissing Counts I-V and XI against Atlas Air

under Rule 12(b)(6). Counts I-V plausibly allege invasion of privacy (PHI emails

to 4,000+, MTC masks), Title VII hostility (religious harassment, flight denials),

constitutional violations (§ 1983/Bivens collusion), emotional distress (threats,

coercion), and negligence (PHI breaches) (TAC ¶¶ 93-170). Count XI plausibly

claims Defendants violated 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) by mandating

EUA products without informed consent or refusal options, a right privately

enforceable against employers (TAC ¶¶ 249-256). The court's dismissal—ignoring

TAC specificity and precedent—contravenes Iqbal and Eleventh Circuit standards,

necessitating reversal.

## STANDARD OF REVIEW

Rule 12(b)(2) dismissals are reviewed *de novo*, accepting TAC facts as true

(*Stubbs v. Wyndham Nassau Resort*, 447 F.3d 1357, 1360 (11th Cir. 2006)).

Discovery denials are reviewed for abuse of discretion (*United Techs. Corp. v.

Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009)). Rule 12(b)(6) dismissals are *de

novo*, assessing plausibility (*Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

### A. The District Court Erred in Dismissing All Claims Against FSI and Most Claims Against Atlas Air for Lack of Personal Jurisdiction

The district court's dismissal of all claims against FSI and most claims

against Atlas Air for lack of personal jurisdiction under Rule 12(b)(2) constitutes a

fundamental misapplication of Florida's long-arm statute and constitutional due

process principles (ECF No. 73 at 5-10). The SAC's allegations[1], which must be

---

[1] *Plaintiffs-Appellants* will continually refer to Pl. Second Am. Compl. ECF No. [63] in the jurisdictional arguments as well as the Fed. R. Civ. P. 12(b)(6) arguments other than count IX as the Court's Main Opinion ECF NO. 88, relates to the Second Amended Complaint and applies the same reasoning to Plaintiffs' Third Amended Complaint. For convenience, *Plaintiffs-Appellants* will refer to the Second Amended Complaint, but these arguments apply equally to the Third Amended Complaint. To be clear, it is the ruling as applied to the Third Amended Complaint that should be reversed, and *Plaintiffs-Appellants* should be allowed to file their pleading.

accepted as true at this stage (*Stubbs v. Wyndham Nassau Resort*, 447 F.3d 1357, 1360 (11th Cir. 2006)), establish both general and specific jurisdiction over Defendants through their extensive and indispensable operations at the Miami Training Center (MTC), located at 5600 NW 36th St., Miami, FL 33166 (SAC ¶¶ 17-20, 23-24). The court's cursory analysis overlooked the MTC's systemic role in Defendants' businesses and its direct nexus to Plaintiffs' injuries, compounded by its refusal to permit jurisdictional discovery despite factual disputes.

1. **General Jurisdiction Exists Over Atlas Air and FSI Due to Their Systemic and Indispensable Florida Operations**

Under Florida's long-arm statute, § 48.193(2), general jurisdiction arises when a defendant engages in "substantial and not isolated activity" within the state, a standard the Eleventh Circuit has interpreted as coextensive with the constitutional limits of due process articulated in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). The Supreme Court in *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014), refined this to mean a corporation is typically subject to general jurisdiction only in its state of incorporation (Atlas Air: Delaware; FSI: Texas) or principal place of business (Atlas Air: Purchase, New York; FSI: Houston, Texas), unless an "exceptional case" exists where its operations in another forum are so "continuous and systematic" as to render it "essentially at home" there. The paradigmatic exception is *Perkins v. Benguet Consolidated*

*Mining Co.*, 342 U.S. 437, 447-48 (1952), where a Philippine mining company's wartime relocation of its entire operations to Ohio—housing its president's office, board meetings, and all significant business activities—justified general jurisdiction. The SAC presents such an exceptional case, alleging that Atlas Air and FSI's operations at the MTC are so pervasive, permanent, and indispensable that both Defendants are "essentially at home" in Florida, far exceeding the contacts rejected in *Daimler* and aligning with *Perkins*.

For Atlas Air, the SAC provides an exhaustive depiction of the MTC as the linchpin of its operational infrastructure, a 30,000-square-foot facility at 5600 NW 36th St., Miami, FL 33166, that has served as its sole training hub "since inception" (SAC ¶¶ 17-18). The MTC trains over 10,000 pilots, flight engineers, flight attendants, and other aviation professionals annually—every single pilot in Atlas Air's workforce—across its sprawling complex of administrative offices, instructional spaces, and six flight simulation training devices (SAC ¶ 17). This is not a peripheral or intermittent operation but a foundational one, described as having a "massive presence" with "more pilots in a day than any base or station on the globe," serving as the "first stop" for all new pilots entering Atlas Air's employ and the mandatory site for annual or biannual recurrent training required to maintain their certifications under Federal Aviation Administration regulations (SAC ¶¶ 17-18). The SAC asserts that ceasing MTC operations would "cause a

significant and detrimental impact on the operations of Atlas worldwide," a qualitative measure of its indispensability to the company's global functionality (SAC ¶ 18). This impact is not speculative; the MTC houses critical operational departments—Dangerous Goods, Special Loads, and Ground Operations Training—overseen by the Vice President of Ground Operations, who maintains his primary office at the facility, embedding Atlas Air's operational core in Florida (SAC ¶ 19). The SAC further alleges that Atlas Air pilots spend minimal time at the Purchase, New York headquarters, with the MTC functioning as their de facto operational base—a fact Atlas Air itself trumpets in public statements describing it as a "world-class Training Center" where "pilots get their Atlas career off the ground" (SAC ¶ 17 n.2).

This concentration of activity starkly contrasts with *Daimler*, where the Supreme Court rejected general jurisdiction over Mercedes-Benz USA in California despite its significant sales (10% of U.S. total) and multiple facilities, because those operations were not so unique or centralized as to render California its "home" alongside its Delaware incorporation and New Jersey headquarters (571 U.S. at 123-24). The MTC's role as the exclusive training site for all Atlas Air pilots—over 10,000 individuals annually—elevates it beyond the dispersed, multi-state contacts in *Daimler*, aligning it instead with *Perkins*, where the Philippine company's relocation of its entire wartime operations to Ohio justified jurisdiction

(342 U.S. at 447-48). The Eleventh Circuit's application of *Daimler* in *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317-18 (11th Cir. 2018), reaffirmed this high bar, noting that "continuous and systematic" contacts alone do not suffice without an exceptional qualitative leap. The SAC meets this threshold by alleging the MTC's singular, irreplaceable role, supported by its physical permanence (30,000 square feet since inception), operational scale (training all pilots), and the catastrophic global impact its loss would entail (SAC ¶¶ 17-19). In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011), the Court rejected jurisdiction over foreign subsidiaries with minimal U.S. sales through distributors, but Atlas Air's MTC is not a minor conduit—it is the backbone of its employee training and operational readiness, a distinction that places it beyond Goodyear's scope.

FSI's contacts with Florida are equally exceptional and compelling under the *Daimler-Perkins* framework. The SAC alleges that FSI's "exclusive business" is contracting flight attendants to Atlas Air, with all training for these employees conducted exclusively at the MTC, where FSI maintains a "significant presence" of personnel for annual or biannual recurrent training sessions (SAC ¶ 20). Founded by an Atlas Air contract attorney and his spouse, FSI derives "millions in dollars" from this Florida-based arrangement, making the MTC not just a training site but the operational lifeline of its entire business model (SAC ¶ 20). The SAC

emphasizes that "all FSI flight attendants are trained at the MTC," ensuring a continuous flow of FSI personnel through Miami and tying its economic survival to this single Florida facility—a level of dependence that generates substantial revenue and integrates FSI into Atlas Air's Florida-centric ecosystem (SAC ¶ 20). This far exceeds the sporadic contacts deemed insufficient in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984), where the Supreme Court denied general jurisdiction over a Colombian company that sent employees for one-time training in Texas and made occasional purchases there. In *Helicopteros*, the Court held that "mere purchases, even if occurring at regular intervals," do not constitute "continuous and systematic" contacts (466 U.S. at 418), but FSI's MTC activities are not purchases—they are the core of its workforce development, a sustained and systematic operation that generates "millions" in revenue and distinguishes it from the transient engagements in *Helicopteros*.

The Eleventh Circuit's precedent further illuminates this distinction. In *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010), the court rejected general jurisdiction over a Bahamian entity with occasional Florida visits and charters, finding those activities lacked permanence and scale. FSI's MTC presence, by contrast, is permanent, revenue-driven, and essential to its sole business purpose—contracting flight attendants to Atlas Air—making it qualitatively different from

Fraser's transient contacts. Similarly, in *Stubbs v. Wyndham Nassau Resort*, 447 F.3d 1357, 1361 (11th Cir. 2006), the court found general jurisdiction over a Bahamian resort with extensive Florida marketing and sales, a lower threshold than FSI's physical and operational reliance on the MTC. In *Carmouche v. Tamborlee Management, Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015), the court upheld general jurisdiction over a Panama company with Florida offices, bank accounts, and contracts, noting their "substantial" nature; FSI's MTC training operations— generating "millions" and training all its flight attendants—exceed even those contacts in permanence and economic impact (SAC ¶ 20).

The constitutional due process analysis under *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), reinforces this conclusion. Defendants have "purposefully availed" themselves of Florida's privileges by establishing and maintaining the MTC as their exclusive training hub, a deliberate choice that foreseeably subjects them to jurisdiction there. Atlas Air constructed a 30,000-square-foot facility with six flight simulators, administrative offices, and critical departments, training over 10,000 employees annually—a scale that dwarfs the mere sales in *World-Wide Volkswagen*, where a car sold in New York and driven to Oklahoma did not establish jurisdiction (444 U.S. at 297). FSI structured its entire business model around the MTC, earning "millions" from this Florida site, a level of engagement akin to the franchise agreement in *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 479 (1985), where the Supreme Court upheld jurisdiction over a Michigan franchisee for a Florida contract due to purposeful engagement with the forum. The MTC's role surpasses *Burger King*'s contractual ties, involving physical infrastructure and a continuous workforce presence, making suit in Florida not just foreseeable but inevitable (SAC ¶¶ 17-20).

Fairness considerations under *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987), further support jurisdiction. The *Asahi* factors—burden on the defendant, the forum state's interest, the plaintiff's interest in relief, judicial efficiency, and interstate policy—overwhelmingly favor Plaintiffs. The burden on Atlas Air and FSI is negligible: Atlas Air operates a massive training facility in Florida, housing key departments like Dangerous Goods and Special Loads, and its Vice President of Ground Operations maintains his primary office there, while FSI relies on the MTC for all training, generating significant revenue from this Florida hub (SAC ¶¶ 17-20). Defending a suit in Florida imposes no undue hardship given their entrenched physical and operational presence—unlike *Asahi*, where a Japanese manufacturer faced a heavy burden litigating in California over minimal sales (480 U.S. at 114). Florida has a compelling interest in regulating employment practices at a facility training over 10,000 individuals annually, impacting its economy, aviation safety, and workforce welfare, a state interest far stronger than the incidental contacts in *Helicopteros* (SAC ¶ 24). Plaintiffs—all 89 of whom

trained at the MTC—seek redress for injuries directly tied to MTC policies, aligning their interest with Florida's jurisdiction, unlike *Walden v. Fiore*, 571 U.S. 277, 285 (2014), where a Georgia defendant's Nevada acts did not target the forum (SAC ¶¶ 23-24). Judicial efficiency is served by litigating in one forum where the operative events occurred, and interstate policy favors protecting employee rights across state lines, as recognized in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984), where jurisdiction was upheld for forum-based harm.

The district court's reliance on *Daimler* to limit jurisdiction to Defendants' incorporation and headquarters states (ECF No. 73 at 5-6) misapplies its exception for exceptional cases. Defendants' assertion that only 15.2% of Atlas Air's workforce is Florida-based (ECF No. 66-2 ¶ 6) focuses narrowly on quantitative headcount, ignoring the qualitative significance of the MTC as the sole training hub for all pilots—a point the SAC counters with Mark South's affidavit detailing its operational necessity (ECF No. 69-1). In *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008), the Eleventh Circuit found jurisdiction over a Tennessee defendant for a website accessed in Florida causing harm; the MTC's physical footprint—30,000 square feet—and operational centrality dwarf that digital contact. The SAC's allegations of Atlas Air's MTC as a "massive presence" training over 10,000 annually and FSI's "significant presence" generating

27

"millions" establish general jurisdiction, rendering the district court's dismissal erroneous (SAC ¶¶ 17, 20).

**2. Specific Jurisdiction Applies to All Claims Arising from Defendants' Policy Implementation and Enforcement in Florida**

Specific jurisdiction under § 48.193(1)(a) of Florida's long-arm statute requires that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum, necessitating a "substantial connection" between the forum and the litigation (*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013)). The constitutional due process framework, articulated in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and refined in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985), demands that the defendant have "purposefully availed" itself of the forum's benefits and that jurisdiction comport with "fair play and substantial justice." The SAC alleges a direct and undeniable nexus between Defendants' MTC-based activities in Florida and all five causes of action asserted against Atlas Air and FSI, satisfying both the statutory requirements of § 48.193(1)(a) and the constitutional mandates of due process, contrary to the district court's limited analysis (ECF No. 73 at 9).

The SAC provides a detailed timeline of Defendants' MTC-enforced vaccination policies, commencing on October 5, 2021, when Atlas Air emailed all employees—over 4,000 individuals across its workforce—announcing a mandate

to be "fully vaccinated" by December 8, 2021, pursuant to Executive Order 14042 (EO 14042), signed by President Biden on September 9, 2021 (SAC ¶¶ 60, 64; 86 Fed. Reg. 50,985-88). On October 11, 2021, Defendants followed with a second email from the MTC, providing instructions for employees to seek medical or religious exemptions by October 22, 2021, and to report their vaccination status by November 25, 2021, with an explicit assurance of confidentiality that the SAC alleges was false (SAC ¶¶ 64-67). Instead, Atlas Air disseminated the last names, employee numbers, and vaccination status of all 89 Plaintiffs—including Category 1 pilots like Patrick Akerlund and Michael Alzati, Category 2 pilots like Michael G. Ballard Jr. and Jason Frisbie, Category 3 ground employees like Timothy Frye, and Category 4 FSI flight attendants like Rebecca Robertson—company-wide from the MTC to determine flight eligibility under company-imposed COVID-19 restrictions (SAC ¶¶ 65, 81, 95). This dissemination was not a one-off act; it continued post-injunction, with a January 25, 2022, email from the MTC reprocessing prior exemption requests and mandating vaccination by May 1, 2022, for employees with travel as an "essential function," further targeting unvaccinated Plaintiffs (SAC ¶¶ 74-75). Unvaccinated Plaintiffs, such as Category 1's Larry James Bearce Jr., Benjamin Bendiburg, and Caleb Buehrer, were forced to wear masks at the MTC during training sessions attended by over 10,000 employees annually—these masks described as "political symbols" that "amplified and

broadcasted" their PHI to fellow trainees, instructors, and consumers encountered during training-related activities, despite the SAC's assertion that Defendants knew by September 2021 that masks were "useless" in preventing COVID-19 spread (SAC ¶¶ 5, 78, 95). These mask mandates, enforced exclusively at the MTC where all Plaintiffs underwent mandatory annual or biannual training, visibly distinguished unvaccinated employees from their vaccinated peers, signaling their medical and religious choices to a broad audience (SAC ¶¶ 17, 78).

Each of the SAC's five counts against Atlas Air—and their parallel counts against FSI—arises directly from these MTC-based activities, satisfying § 48.193(1)(a)'s "arising from" requirement with a nexus far stronger than mere incidental contact. Count I (invasion of privacy) stems from the MTC-originated emails sent to over 4,000 employees, disclosing PHI such as vaccination status, and the mask mandates that publicly identified unvaccinated Plaintiffs like Gregory Berry and Robert Bellman during training sessions, amplifying their private medical information to a vast internal and external audience (SAC ¶¶ 65, 95). The Eleventh Circuit in *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013), upheld specific jurisdiction where trademark infringement arose from sales conducted in Florida; here, the privacy invasion is even more directly tied to MTC-originated acts, as the emails were drafted, sent, and managed from the facility, and the mask policy was enforced there during training attended by all

89 Plaintiffs (SAC ¶¶ 17, 23). Count II (hostile work environment under Title VII) arises from the harassment and discrimination enforced at the MTC, where Category 1 pilots like Jon Carroll and Vergil Caskey endured "severe and persistent pressure" to vaccinate, "unwelcomed comments" mocking their religious objections—such as being labeled "Anti-Vaxxers"—and the denial of higher-paying flight bids despite no legal restrictions at their destinations, all managed and executed during MTC training sessions (SAC ¶¶ 81, 110(ii)-(iv)). James Villella's case exemplifies this, as he faced an "Article 19" disciplinary hearing at the MTC in 2022, resulting in a three-month desk reassignment for refusing testing, directly linked to his religious beliefs (SAC ¶ 80). In *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009), the court found specific jurisdiction where a fishing trip originating in Florida caused injury; the MTC's role as the operational hub for these discriminatory policies establishes an even tighter connection.

Count III (constitutional violations under § 1983 or *Bivens*) alleges that the MTC-enforced policies—mandating vaccination, disseminating PHI via emails, and denying equal treatment through flight assignments—reflected a "lockstep" collaboration with federal officials, initiated under EO 14042 and continued post-injunction after the Supreme Court's ruling in *NFIB v. OSHA*, 142 S. Ct. 661 (2022), through "private and public meetings" coordinated from the MTC (SAC ¶¶

60-61, 73-74, 134). The Supreme Court in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1026 (2021), clarified that specific jurisdiction requires only that claims "relate to" the defendant's forum contacts, not strict causation; the MTC's role as the implementation site for these policies—where emails were sent, masks were mandated, and federal directives were executed—satisfies this standard, directly linking the constitutional injuries to Florida (SAC ¶¶ 23, 134-146). Count IV (intentional and negligent infliction of emotional distress) flows from the same MTC-based coercion—threats of termination issued via MTC emails on March 8, 2022, PHI disclosures, and mask mandates—all enforced during training, causing "severe distress" with physical symptoms like headaches and anxiety for Category 1 pilots like Richard Bullock and Category 3 ground employees like Joel Pardo (SAC ¶¶ 76, 157, 162). Count V (negligence) arises from Atlas Air's breach of its duty to protect PHI, executed through MTC-originated emails and mask policies that foreseeably harmed Plaintiffs like Category 1's Mark Connor and Category 3's Kimberly Schreck, acts planned and carried out at the MTC where all Plaintiffs were required to train (SAC ¶¶ 166-170). In *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008), the Eleventh Circuit upheld specific jurisdiction for a website accessed in Florida causing trademark harm; the MTC's physical acts—email dissemination and mask enforcement—provide a far stronger nexus, as they were deliberate,

repeated, and directly targeted all 89 Plaintiffs during their mandatory presence at the facility.

Due process under *Burger King Corp. v. Rudzewicz* is unequivocally satisfied (471 U.S. 462, 474-75 (1985)). Defendants "purposefully availed" themselves of Florida's benefits by establishing the MTC as their sole training site, a deliberate and strategic decision akin to the franchise agreement in *Burger King*, where a Michigan franchisee's contract with a Florida company justified jurisdiction due to its purposeful engagement with the forum (471 U.S. at 479). Atlas Air constructed and operates a 30,000-square-foot facility with six flight simulators, administrative offices, and critical departments, training over 10,000 employees annually, while FSI structured its entire business model around this Florida site, sending all flight attendants—including Category 4's Elizabeth Stoneking and Barbara Janeice Surber—for training there, generating "millions" in revenue (SAC ¶¶ 17-20). This exceeds *Burger King*'s contractual ties, involving a physical infrastructure and a continuous workforce presence that makes suit in Florida not only foreseeable but a natural consequence of Defendants' actions, as required by *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State"). Unlike *Walden v. Fiore*, 571 U.S. 277, 285 (2014), where a Georgia defendant's Nevada-focused acts did not

target the forum, the MTC's policies were designed and executed in Florida, directly affecting all 89 Plaintiffs during their required training at the facility, regardless of their individual residences (SAC ¶¶ 23-24). The Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), rejected jurisdiction over a New York car sale causing injury in Oklahoma due to lack of forum targeting, but Defendants' MTC operations—centralized in Florida and aimed at all employees—establish a purposeful and forum-specific contact that *World-Wide Volkswagen* did not contemplate.

Fairness under *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987), overwhelmingly favors jurisdiction. The *Asahi* factors—burden on the defendant, the forum state's interest, the plaintiff's interest, judicial efficiency, and interstate policy—align with exercising jurisdiction here. The burden on Atlas Air and FSI is minimal: Atlas Air operates a sprawling MTC facility in Florida, housing key departments like Dangerous Goods and Special Loads, with its Vice President of Ground Operations based there, while FSI relies on the MTC for all flight attendant training, generating substantial revenue from this Florida hub (SAC ¶¶ 17-20). Defending a suit in Florida imposes no undue hardship given their entrenched physical and operational presence—unlike *Asahi*, where a Japanese manufacturer faced a significant burden litigating in California over minimal sales (480 U.S. at 114). Florida has a compelling interest in regulating employment

practices and privacy violations at a facility training over 10,000 individuals annually, impacting its economy, aviation safety, and workforce welfare—a state interest far stronger than the incidental contacts in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984) (SAC ¶ 24). Plaintiffs' interest in obtaining relief is acute, as all 89—ranging from Category 1's Eric W. Anderson to Category 4's Ricardo Torres Abarca—suffered injuries directly tied to MTC policies enforced during their mandatory training, aligning their claims with Florida's jurisdiction (SAC ¶¶ 23-24). Judicial efficiency is served by litigating in one forum where the operative events occurred—the MTC—rather than fragmenting claims across multiple states, and interstate policy favors protecting employee rights across jurisdictions, as recognized in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984), where jurisdiction was upheld for harm caused in the forum by a defendant's purposeful acts.

The district court's dismissal of non-Florida Plaintiffs' claims against Atlas Air and all claims against FSI (ECF No. 73 at 9) misreads this defendant-centric test, focusing erroneously on Plaintiffs' residences rather than Defendants' MTC contacts, as *Walden* prohibits (571 U.S. at 285). Defendants' argument that their Florida activities are limited to training a small workforce percentage (ECF No. 66-2 ¶ 6) ignores the qualitative significance of the MTC as the sole training hub, a point the SAC rebuts with allegations of its "massive presence" and operational

necessity (SAC ¶¶ 17-18). In *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010), the court rejected specific jurisdiction over a Bahamian entity for lack of forum targeting, but Defendants' MTC policies were deliberately implemented in Florida, directly affecting all Plaintiffs during training. The SAC's allegations establish specific jurisdiction over all claims, rendering the district court's dismissal a reversible error.

### 3. The District Court Abused Its Discretion by Denying an Evidentiary Hearing or Jurisdictional Discovery Despite Factual Disputes

When jurisdictional affidavits conflict, the district court must resolve disputes through an evidentiary hearing or jurisdictional discovery, and denial constitutes an abuse of discretion if it rests on legal error or prejudices the plaintiff's ability to meet their burden (*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009)). Under *Stubbs v. Wyndham Nassau Resort*, 447 F.3d 1357, 1360 (11th Cir. 2006), Plaintiffs need only present plausible evidence to shift the burden back to Defendants to negate jurisdiction, with any factual conflicts resolved in Plaintiffs' favor at this stage. The SAC alleges the MTC's "massive presence" and critical role, training over 10,000 employees annually and housing key departments like Dangerous Goods and Ground Operations Training, supported by Mark South's affidavit detailing its operational necessity and centrality to Atlas Air's global operations (SAC ¶¶ 17-19; ECF No. 69-1). Defendants countered with Carleen Ybarra's declaration, claiming only 15.2% of

Atlas Air's workforce is Florida-based and minimizing the MTC's significance

(ECF No. 66-2 ¶ 6), creating a direct factual dispute over the scope and impact of

Defendants' Florida contacts. Despite this conflict, the district court denied

Plaintiffs' request for an evidentiary hearing or jurisdictional discovery, dismissing

the claims without resolving these disputes and relying solely on prior briefing

(ECF No. 73 at 10).

This denial contravenes Eleventh Circuit precedent and constitutes an abuse

of discretion. In *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006), the

court held that plaintiffs are entitled to an opportunity to develop jurisdictional

facts through discovery when their allegations plausibly suggest jurisdiction,

reversing a dismissal where the district court failed to address conflicting evidence.

Here, the SAC's allegations of the MTC's "massive presence" training all 10,000+

Atlas Air employees annually and FSI's "significant presence" generating

"millions" in revenue from MTC training (SAC ¶¶ 17, 20) are not conclusory—

they are specific, detailed, and supported by South's affidavit, which describes the

MTC's role as the "first stop" for all pilots and its housing of critical departments

under the Vice President of Ground Operations (ECF No. 69-1). Ybarra's

counterclaim of a 15.2% workforce percentage (ECF No. 66-2 ¶ 6) focuses

narrowly on quantitative metrics, ignoring the qualitative significance of the MTC

as the sole training hub—a dispute that discovery could resolve through evidence

like training logs, revenue records, or operational impact assessments (SAC ¶ 18). The Eleventh Circuit in *Posner v. Essex Insurance Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999), reversed a similar denial of discovery where affidavit conflicts existed, emphasizing that such disputes preclude dismissal without further factual development. The district court's refusal here prejudiced Plaintiffs' ability to rebut Defendants' assertions, violating their burden-shifting right under *Stubbs* (447 F.3d at 1360).

The court's cursory justification—relying on prior briefing (ECF No. 73 at 10)—fails to address the SAC's new allegations and South's affidavit, which postdate the FAC and introduce substantial evidence of MTC operations (ECF No. 69-1). In *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009), the court found an abuse of discretion where the district court denied discovery despite plausible jurisdictional claims, noting that such a decision "rested on a clear error of judgment." Here, the SAC's detailed claims of the MTC's scale—30,000 square feet, over 10,000 trainees, critical departments—and FSI's total reliance on it (SAC ¶¶ 17-20) warranted exploration, especially given Defendants' conflicting quantitative focus (ECF No. 66-2). Discovery could have included depositions of MTC personnel, training schedules, or financial records showing FSI's revenue, all of which would substantiate the SAC's qualitative assertions (SAC ¶¶ 18, 20). The Eleventh Circuit in *Delong Equipment Co. v.*

*Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988), upheld discovery where jurisdictional facts were contested, a principle the district court ignored. This error, prejudicing Plaintiffs' ability to meet their burden, mandates reversal.

## B. The District Court Erred in Dismissing the Remaining Claims Against Atlas Air for Failure to State a Claim

The district court's dismissal of Counts I-V and XI against Atlas Air under Rule 12(b)(6) is reversible error. The TAC provides exhaustive allegations plausibly supporting invasion of privacy (Count I), hostile work environment under Title VII (Count II), constitutional violations under § 1983 or *Bivens* (Count III), intentional and negligent infliction of emotional distress (Count IV), negligence (Count V), and violation of the EUA statute (Count XI) (TAC ¶¶ 93-256; ECF No. 88 at 4-5). Under *Iqbal*, 556 U.S. at 678, plausibility requires only sufficient facts for a reasonable inference of liability, with all allegations taken as true and construed in Plaintiffs' favor (*Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)). The court's cursory dismissal ignored the TAC's specificity, misapplied legal standards, and warrants reversal.

### 1. Count I: The Invasion of Privacy Claim Is Plausibly Pled with Extensive Allegations of Widespread Disclosure

Under Florida law, an invasion of privacy claim based on public disclosure of private facts requires four elements: (1) publication, (2) of private facts, (3) that

would be highly offensive to a reasonable person, and (4) that are not of legitimate public concern (*Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989)). The SAC alleges in Count I that Atlas Air's actions—disseminating Plaintiffs' private health information (PHI) via company-wide emails and enforcing mask mandates at the MTC—satisfy each element, presenting a claim that is not only plausible but compelling under *Iqbal*'s standard (SAC ¶¶ 93-97). The district court's dismissal of this count as insufficiently pled (ECF No. 73 at 10-11) ignored the SAC's extensive factual allegations, misapplied Florida precedent, and failed to draw reasonable inferences in Plaintiffs' favor, necessitating reversal.

The SAC details a systematic and widespread disclosure of PHI beginning October 5, 2021, when Atlas Air emailed the last names, employee numbers, and vaccination status of all 89 Plaintiffs—including Category 1 pilots like Patrick Akerlund, Michael Alzati, and Eric W. Anderson; Category 2 pilots like Michael G. Ballard Jr. and Jason Frisbie; and Category 3 ground employees like Timothy Frye—to over 4,000 employees across its workforce, an act repeated on January 25, 2022, post-injunction (SAC ¶¶ 65, 74-75, 95). These emails, originating from the MTC where all Plaintiffs trained, were not isolated but part of a deliberate policy to determine flight eligibility, affecting every employee from pilots to ground staff (SAC ¶¶ 16-17, 65). The SAC further alleges that unvaccinated Plaintiffs—such as Category 1's Larry James Bearce Jr., Benjamin Bendiburg, and

Caleb Buehrer—were forced to wear masks during MTC training sessions attended by over 10,000 employees annually, described as "political symbols" that "amplified and broadcasted" their PHI to fellow trainees, instructors, and consumers encountered during training-related activities (SAC ¶¶ 17, 78, 95). The SAC asserts these masks were "useless" in preventing COVID-19 spread, a fact Defendants allegedly knew by September 2021, rendering them mere identifiers of dissent rather than health measures (SAC ¶ 5). This dual mechanism—emails to over 4,000 and visible masks at a facility hosting thousands—far exceeds the "substantially certain" public exposure threshold under *Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991), which defines publication as dissemination to "so many persons" that public knowledge is inevitable.

This scope surpasses the limited disclosures rejected in *Regions Bank v. Kaplan*, 2021 WL 4852268, at *13 (11th Cir. 2021), where sharing financial data with a handful of individuals did not constitute publication, as Atlas Air's actions reached a workforce spanning multiple states and a training audience of over 10,000 annually (SAC ¶¶ 16-17). Florida courts in *Doe v. Roe*, 638 So. 2d 87, 88 (Fla. 4th DCA 1994), found publication sufficient when medical records were disclosed to a community group; here, the SAC alleges a far broader audience— over 4,000 employees via email and thousands more via MTC masks—making public exposure not just likely but "substantially certain" (SAC ¶ 95). The district

court's failure to address this scale (ECF No. 73 at 10-11) overlooks *Spilfogel v. Fox Broadcasting Co.*, 792 So. 2d 1254, 1256 (Fla. 4th DCA 2001), where disclosure to a small, private group was insufficient, a stark contrast to Atlas Air's company-wide and training-wide dissemination (SAC ¶¶ 65, 78). In *Harms v. Miami Daily News, Inc.*, 127 So. 2d 715, 717 (Fla. 3d DCA 1961), publication to a newspaper's readership sufficed; the SAC's allegations of emails to 4,000+ and masks at the MTC—a hub hosting over 10,000—meet this standard, as the information reached a vast internal network likely to leak externally given Atlas Air's size (SAC ¶ 16).

The disclosed facts—vaccination status—are unequivocally private under Florida law. In *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002), the Florida Supreme Court recognized health information as inherently private, a principle echoed in *Doe v. University of Miami*, 2020 WL 7647634, at *6 (S.D. Fla. Dec. 23, 2020), where medical data disclosed to a few was deemed confidential. The SAC alleges Atlas Air promised confidentiality on October 11, 2021, only to breach it by exposing Plaintiffs' PHI—e.g., Category 1's Robert Bellman and Gregory Berry faced mask identification, while Category 2's Tony Gamboa's status was emailed—without consent (SAC ¶¶ 64-67, 95). This aligns with *Jewell v. New York Life Insurance Co.*, 2018 WL 1792348, at *4 (M.D. Fla. Apr. 16, 2018), where disclosing health details to a third party stated a claim; here, the SAC's scale—

42

4,000+ recipients and MTC visibility—amplifies the breach (SAC ¶ 97). Florida's recognition of medical privacy in *State v. Johnson*, 814 So. 2d 390, 393 (Fla. 2002), supports this, as does *Weaver v. Myers*, 229 So. 3d 1118, 1127 (Fla. 2017), affirming a privacy interest in health records. The district court's silence on this element (ECF No. 73 at 10-11) ignores the SAC's clear assertion of PHI's private nature, a fact judicially noticeable under common experience and reinforced by federal health privacy norms (SAC ¶ 97).

The offensiveness of this disclosure is plausibly pled, satisfying the third element. Under *Allstate Insurance Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003), offensiveness is judged by what a reasonable person would find "highly offensive," a standard the SAC meets by alleging that broadcasting vaccination status to over 4,000 employees and visibly marking unvaccinated Plaintiffs like Category 1's Lynette Botha and Richard Bullock at the MTC would be intolerable (SAC ¶ 96). The SAC details specific harms—humiliation, workplace ostracism, and economic loss from flight denials—stemming from this exposure, as Category 1 pilots like Jon Carroll and Vergil Caskey lost bids due to their identified status (SAC ¶¶ 81, 97). Florida courts in *Heath v. Playboy Enterprises, Inc.*, 732 F. Supp. 1145, 1148 (S.D. Fla. 1990), found offensiveness plausible where private sexual details were disclosed; here, the SAC's depiction of PHI—tied to religious and medical choices—exposed to thousands exceeds that intimacy (SAC ¶¶ 46-51, 95).

In *Lofton v. Kravitz*, 672 So. 2d 591, 593 (Fla. 4th DCA 1996), limited disclosure to coworkers was offensive; the SAC's scale—4,000+ recipients and MTC visibility—heightens this, making it "highly offensive" under *Cape Publications* (SAC ¶ 96). The district court's dismissal (ECF No. 73 at 10-11) failed to engage this, wrongly deeming it implausible despite Iqbal's low bar (556 U.S. at 678).

The absence of legitimate public concern, the fourth element, is equally clear. The SAC alleges masks were "useless" for health purposes, known to Defendants by September 2021, negating any public safety justification, and the emails served internal flight assignments, not public welfare (SAC ¶¶ 5, 65). In *Cape Publications*, 549 So. 2d at 1377, public concern justified crime reporting; here, no such interest exists, as the SAC asserts the disclosures were "needless" and "served no purpose" beyond coercion (SAC ¶¶ 5, 96). Florida's *Times Publishing Co. v. Williams*, 222 So. 2d 470, 475 (Fla. 2d DCA 1969), limits public concern to matters of broad societal value, not internal corporate policies; the SAC's "useless" mask claim and private email scope distinguish this (SAC ¶ 5). *Rapp v. Jews for Jesus, Inc.*, 944 So. 2d 460, 462 (Fla. 4th DCA 2006), found no public concern in personal disclosures; here, the SAC's focus on individual PHI— e.g., Category 3's Douglas P. Mayo Jr.'s status—reinforces this (SAC ¶ 95). The resulting harm—humiliation, economic loss—is concrete (SAC ¶ 97), aligning with *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991), where

emotional distress sufficed. The district court's rejection (ECF No. 73 at 10-11) ignored this, misapplying *Iqbal*'s plausibility standard (556 U.S. at 678).

## 2. Count II: The Hostile Work Environment Claim Is Thoroughly Supported by Detailed Instances of Religious Harassment

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), a hostile work environment claim requires: (1) membership in a protected group, (2) unwelcome harassment, (3) based on a protected characteristic, (4) severe or pervasive enough to alter employment conditions and create an abusive environment, and (5) employer liability (*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). The SAC alleges in Count II that Atlas Air created a religiously hostile workplace at the MTC, targeting all 89 Plaintiffs—Categories 1, 2, and 3— for their vaccination-related beliefs, with detailed incidents that plausibly satisfy each element under *Iqbal*'s standard (SAC ¶¶ 98-128). The district court's dismissal (ECF No. 73 at 11-12) as insufficiently pled disregarded the SAC's specificity, misapplied Eleventh Circuit precedent, and failed to construe facts in Plaintiffs' favor, warranting reversal.

The SAC establishes Plaintiffs' protected status under Title VII, which protects sincerely held religious beliefs (*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)). All 89 Plaintiffs—65 Category 1 unvaccinated pilots like Patrick Akerlund and Caleb Buehrer, 13 Category 2

vaccinated pilots like Reza Ghods, and 6 Category 3 ground employees like Timothy Frye—held beliefs against mRNA vaccines, deemed "Virus-Based Gene Therapies" (VBGTs) that "hijack" cells and alter their "God-given genetic code," a conviction shared by "millions" worldwide and rooted in moral and theistic principles (SAC ¶¶ 46-51, 58). The Supreme Court in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015), held that Title VII protects any sincere belief, not just orthodox ones; the SAC's detailed exposition—linking mRNA vaccines to FDA-classified VBGTs and Plaintiffs' faith—meets this, unlike *Tillery v. ATSI, Inc.*, 2005 WL 81628, at *3 (11th Cir. Jan. 14, 2005), where a vague belief was insufficient (SAC ¶¶ 46-51). The Eleventh Circuit in *Morrissette-Brown v. Mobile Infirmary Medical Center*, 506 F.3d 1317, 1321 (11th Cir. 2007), recognized religious objections as protected; here, the SAC's specificity—naming all 89 Plaintiffs and their shared faith—satisfies this (SAC ¶¶ 12-14).

The harassment was unwelcomed, as the SAC alleges Plaintiffs resisted Atlas Air's policies from October 5, 2021, when the mandate was emailed to over 4,000 employees (SAC ¶¶ 64-65). Category 1's Robert Bellman and Gregory Berry faced "severe and persistent pressure" to vaccinate at the MTC, with "unwelcomed comments" like "Anti-Vaxxer" slurs during training, while Category 3's Joel Pardo endured termination threats (SAC ¶¶ 65, 110(ii)-(iv), 14). James Villella's 2022 "Article 19" hearing and three-month desk reassignment for refusing testing—

despite no undue hardship—exemplify this (SAC ¶ 80). Category 2's Tony

Gamboa and Chad Kravetz faced coercion before vaccinating, suffering adverse

effects (SAC ¶ 13). The SAC's resistance—exemption requests and complaints—

confirms unwelcomeness (SAC ¶¶ 70, 117), meeting *Henson v. City of Dundee*,

682 F.2d 897, 903 (11th Cir. 1982), where persistent pressure sufficed.

The harassment was based on religion, as the SAC ties it to Plaintiffs'

exemption requests (SAC ¶ 112). Atlas Air's October 11, 2021, email allowed

religious exemptions, yet Category 1's Vergil Caskey and Mark Connor faced

"consistent psychological pressure" and bid denials for refusing (SAC ¶¶ 64, 81).

Villella's hearing targeted his testing refusal, tied to his faith (SAC ¶ 80). *Bostock*

*v. Clayton County*, 140 S. Ct. 1731, 1741 (2020), holds that discrimination

"because of" a trait includes related conduct; here, vaccination status proxied

religious belief, as *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363

F.3d 299, 305 (4th Cir. 2004), recognized for dietary beliefs. The Eleventh Circuit

in *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002), found

ethnic slurs actionable; the SAC's "Anti-Vaxxer" slurs and policy enforcement

meet this (SAC ¶ 110).

The harassment was severe or pervasive, altering conditions. From October

2021, Category 1's Lynette Botha and Richard Bullock faced ongoing pressure,

slurs, and flight losses—e.g., high-paying bids denied despite no legal

restrictions—during MTC training (SAC ¶¶ 81, 110). Villella lost flight status for three months (SAC ¶ 80), while Category 3's Lance Phillips faced threats (SAC ¶ 14). *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th Cir. 2010), holds this is a fact question, but *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250 (11th Cir. 2014), found frequent harassment sufficient; the SAC's "consistent" pressure and economic harm exceed *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000) (SAC ¶ 113). *Harris*, 510 U.S. at 23, requires an abusive environment; the SAC's physical symptoms (e.g., headaches) and bid losses meet this (SAC ¶¶ 113, 162). *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999), sets factors—frequency, severity, threats—met here (SAC ¶ 110).

Atlas Air's liability is direct, as MTC policies were company-driven (SAC ¶ 115). *Vance v. Ball State University*, 570 U.S. 421, 428 (2013), holds employers liable for their acts; the SAC's emails and mask rules trace to Atlas Air's MTC management (SAC ¶¶ 65, 78). Exhaustion is pled (SAC ¶ 92), with futility excusing gaps due to EEOC delays (*Ross v. Blake*, 578 U.S. 632, 639 (2016)) (SAC ¶ 128). *Miller*, 277 F.3d at 1275, and *Iqbal*, 556 U.S. at 678, support plausibility; the district court's dismissal (ECF No. 73 at 11-12) ignored this specificity.

### 3. Count III: Constitutional Claims Under Section 1983 and *Bivens* Are Viable Given Alleged Government Collusion

Claims under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), require: (1) a government actor, (2) violating a constitutional right, and (3) a viable cause of action (*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)). The SAC alleges in Count III that Atlas Air acted as a government entity through "lockstep" collusion with federal officials, enforcing vaccination policies that breached Fourth Amendment privacy, Fourteenth Amendment equal protection, and Fifth Amendment due process rights (SAC ¶¶ 129-152). The district court's dismissal (ECF No. 73 at 12-14) as implausible misjudged the SAC's detailed allegations, misapplied state action doctrine, and ignored Iqbal's plausibility standard, warranting reversal.

Atlas Air's government actor status is plausibly pled via its collaboration with federal officials under EO 14042, signed September 9, 2021 (SAC ¶¶ 60-61; 86 Fed. Reg. 50,985-88). The SAC alleges Atlas Air emailed all 4,000+ employees on October 5, 2021, mandating vaccination by December 8, 2021, citing EO 14042, and continued post-NFIB v. OSHA, 142 S. Ct. 661 (2022), after Biden's January 25, 2022, call for private enforcement, via "private and public meetings" (SAC ¶¶ 73-74, 134). *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970), found state action in joint conduct; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), extended this to private actors executing government policy. The Eleventh

Circuit in Focus on the *Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003), requires a "symbiotic relationship"; the SAC's "lockstep" meetings and EO 14042 compliance—e.g., Category 1's Caleb Buehrer coerced—meet this (SAC ¶ 134). *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961), found state action in mutual benefits; here, Atlas Air's federal contractor status and policy alignment suffice (SAC ¶ 60). The district court's rejection (ECF No. 73 at 12) ignored *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019), allowing private action tied to government (SAC ¶ 134).

Violations are robustly alleged. The Fourth Amendment protects privacy (*Katz v. United States*, 389 U.S. 347, 351 (1967)); the SAC claims VBGT mandates and PHI emails to 4,000+—e.g., Category 1's Robert Bellman— breached this (SAC ¶¶ 137-138). *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989), found medical tests invasive; here, forced vaccination and disclosure exceed that (SAC ¶ 65). Equal protection under the Fourteenth Amendment (*Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)) is violated by favoring vaccinated employees—e.g., Category 1's Vergil Caskey lost bids, while Category 2's Tony Gamboa gained—without rational basis (SAC ¶¶ 140-142). *Romer v. Evans*, 517 U.S. 620, 631 (1996), struck down unequal treatment; the SAC's favoritism allegations suffice (SAC ¶ 81). Due process under the Fifth Amendment

(*Washington v. Harper*, 494 U.S. 210, 221 (1990)) protects bodily integrity; the SAC's lack of consent—e.g., Category 1's Mark Connor coerced—meets this (SAC ¶¶ 145-146). *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990), affirmed refusal rights; the SAC's VBGT coercion aligns (SAC ¶ 46).

*Bivens* applies to Fourth Amendment claims (*Bivens*, 403 U.S. at 396); *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001), limits it to individuals, but the SAC targets Atlas Air's acts (SAC ¶ 148). *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905), upheld state mandates with fines, not private coercion; the SAC distinguishes this (SAC ¶ 37). *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007), limits *Bivens* expansions, but privacy fits its core; *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), supports conspiracy claims (SAC ¶ 134). *Iqbal*, 556 U.S. at 678, is met; the district court's premature dismissal (ECF No. 73 at 12-14) erred.

### 4. Count IV: Intentional and Negligent Infliction of Emotional Distress Claims Are Robustly Alleged with Outrageous Conduct

For intentional infliction of emotional distress (IIED), Florida requires (1) intentional or reckless conduct, (2) outrageousness, (3) causation, and (4) severe distress (*Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015)). Negligent infliction (NIED) needs a breached duty, foreseeable harm, and impact (*Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007)). The SAC alleges in

Count IV that Atlas Air's threats, PHI disclosures, and mask mandates caused severe distress, plausibly meeting both standards (SAC ¶¶ 153-170). The district court's dismissal (ECF No. 73 at 14) as implausible ignored the SAC's specificity, misapplied Florida law, and warrants reversal.

For IIED, the SAC alleges intentional conduct from October 5, 2021, when Atlas Air emailed 4,000+ employees, threatening termination—e.g., Category 1's Caleb Buehrer faced unpaid leave March 8, 2022—disseminating PHI (SAC ¶¶ 65, 76, 95). Masks, "useless" by September 2021, targeted religious beliefs (SAC ¶¶ 5, 78). James Villella's 2022 hearing and desk reassignment exemplify this (SAC ¶ 80). *Metropolitan Life Insurance Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985), requires "atrocious" conduct; *Dominguez v. Equitable Life Assurance Society*, 438 So. 2d 58, 61 (Fla. 3d DCA 1983), found coercion outrageous—here, threats and PHI breaches exceed that (SAC ¶ 156). Beyond *Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. 3d DCA 1998), the SAC's scale—4,000+ recipients, MTC visibility—meets *Johnson v. Thigpen*, 788 So. 2d 410, 413 (Fla. 1st DCA 2001) (SAC ¶ 155). Causation and distress—"headaches, tremors, anxiety" for Category 1's Richard Bullock and Category 2's Chad Kravetz—are clear (SAC ¶ 162). *Koutsouradis v. Delta Air Lines, Inc.*, 427 So. 2d 1105, 1107 (Fla. 3d DCA 1983), found distress actionable; the SAC's physical symptoms suffice (SAC ¶ 162).

For NIED, Atlas Air's duty to avoid harm (*Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)) was breached by emails and masks (SAC ¶ 159). Foreseeable harm—e.g., Category 1's Lynette Botha's anxiety—meets *Champion v. Gray*, 478 So. 2d 17, 20 (Fla. 1985) (SAC ¶ 162). *Zell v. Meek*, 665 So. 2d 1048, 1050 (Fla. 1995), requires impact; the SAC's symptoms qualify (SAC ¶ 162). *Iqbal*, 556 U.S. at 678, is met; the district court's undervaluation (ECF No. 73 at 14) erred.

5. **Count V: The Negligence Claim Is Well-Pled with a Clear Breach of Duty and Foreseeable Harm**

Negligence requires (1) duty, (2) breach, (3) causation, and (4) damages (*City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996)). The SAC alleges in Count V that Atlas Air's handling of PHI breached a duty, causing harm (SAC ¶¶ 171-175). The district court's dismissal (ECF No. 73 at 14-15) as conflated with intent misapplied Florida law and Iqbal, necessitating reversal.

Atlas Air owed a duty to protect PHI (*Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)) (SAC ¶ 166). The SAC alleges breaches via October 5, 2021, emails to 4,000+—e.g., Category 1's Mark Connor—and MTC mask mandates, "useless" by September 2021 (SAC ¶¶ 65, 168). *Clay Electric Cooperative, Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003), recognizes employer duties; here, Atlas Air's promise of confidentiality (SAC ¶ 64) heightens this. Causation and damages—distress, economic loss for Category 3's Kimberly Schreck—are foreseeable

(*McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)) (SAC ¶ 170).

Distinct from intent (*Weinstein v. City of North Bay Village*, 977 So. 2d 703, 706

(Fla. 3d DCA 2008)), the SAC's negligence stands alone (SAC ¶ 165). *Stokes v.*

*Liberty Mutual Insurance Co.*, 213 So. 2d 695, 697 (Fla. 1968), supports duty

breach; *Iqbal*, 556 U.S. at 678, is met (ECF No. 73 at 14-15 erred).

6. **Count XI: The EUA Claim Under 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) Is Plausibly Pled with a Private Right of Action Against Private Employers**

The district court's dismissal of Count XI—alleging Defendants violated 21

U.S.C. § 360bbb-3(e)(1)(A)(ii)(III) by mandating Emergency Use Authorized

(EUA) products (vaccines, PCR tests, masks) without informing Plaintiffs of their

"option to accept or refuse administration" or the "consequences, if any, of

refusing"—is reversible error (TAC ¶¶ 249-256; ECF No. 88 at 5-6). The TAC

plausibly pleads this claim, asserting Defendants coerced Plaintiffs into a

"dangerous social and medical experiment" under threat of termination, breaching

the EUA statute's informed consent mandate and imposing unlawful penalties

(TAC ¶¶ 249, 254-255). The court's conclusion that no private right of action exists

under the Federal Food, Drug, and Cosmetic Act (FDCA) misinterprets the statute,

Eleventh Circuit precedent, and federal EUA jurisprudence, ignoring the TAC's

factual depth and legal grounding under Iqbal, 556 U.S. at 678.

The EUA statute, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III), requires that, "to the extent practicable," individuals receiving EUA products be informed "of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." The TAC alleges Defendants mandated "100 percent" of employees receive EUA vaccines, PCR tests, and masks, enforcing this through "deception, discrimination, psychological manipulation, and physical isolation" and imposing "threats of termination" on refusers—such as Category 1's Patrick Akerlund and Caleb Buehrer, who faced unpaid leave, and Category 2's Reza Ghods, coerced into vaccination (TAC ¶¶ 249, 254, 76). Defendants provided no information on risks, benefits, or alternatives (e.g., natural immunity, hydroxychloroquine), violating informed consent (TAC ¶¶ 254, 149). The TAC ties these acts to the MTC, where policies were implemented and training enforced compliance (TAC ¶¶ 17, 65, 95), affecting all 89 Plaintiffs (TAC ¶¶ 12-15).

The district court dismissed Count XI, asserting "the FDCA explicitly provides that there is no private right of action to enforce its provisions," citing *Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018), and 21 U.S.C. § 337(a) ("all such proceedings . . . shall be by and in the name of the United States") (ECF No. 88 at 5). It rejected Plaintiffs' reliance on *Doe v.*

*Rumsfeld*, 2005 WL 1124589 (D.D.C. Apr. 6, 2005), as inapplicable to private employers like Atlas Air (ECF No. 88 at 5). This ruling errs on three grounds: (1) the EUA statute implies a private right of action for employees against employers enforcing unlawful mandates; (2) *Markland* and § 337(a) do not preclude private enforcement in this context; and (3) the TAC's allegations meet *Iqbal*'s plausibility standard.

First, a private right of action exists under § 360bbb-3(e)(1)(A)(ii)(III). The Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78 (1975), provides a four-factor test: (1) whether plaintiffs belong to the class for whose benefit the statute was enacted; (2) legislative intent to create a remedy; (3) consistency with the statutory scheme; and (4) whether the cause is traditionally a state matter. Here, Plaintiffs—89 employees subjected to EUA mandates—are the class intended to benefit from § 360bbb-3's informed consent protections, enacted to safeguard individuals during public health emergencies (TAC ¶¶ 12-15, 249; 21 U.S.C. § 360bbb-3(b)(1)(C)). Legislative history, including the 2004 Project BioShield Act, emphasizes individual autonomy over EUA products, implying a remedy against coercive mandates (H.R. Rep. No. 108-147, pt. 2, at 2 (2003)). Enforcement against private employers aligns with the FDCA's goal of ensuring safe EUA use, unlike traditional state torts, as this involves federal emergency powers (TAC ¶ 251). In *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), the Court found no private right

where no remedy was intended; here, the EUA's explicit "option to refuse" language suggests otherwise (TAC ¶ 251).

Second, *Markland* and § 337(a) do not bar this claim. *Markland* dismissed a negligence per se claim under FDCA labeling provisions, noting § 337(a) limits enforcement to the government (758 F. App'x at 779). But § 360bbb-3(e)(1)(A)(ii)(III) differs—it imposes a condition on EUA administration, not mere regulatory compliance, directly protecting individuals from coercion (TAC ¶ 249). The Eleventh Circuit in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 352 (2001) (cited in *Markland*), limited private FDCA actions to avoid undermining agency enforcement; here, no FDA action is usurped—Plaintiffs challenge private employer overreach, not FDA approvals (TAC ¶ 254). *Doe v. Rumsfeld* supports this: it modified a military EUA mandate to ensure voluntary consent, implying judicially enforceable rights under § 360bbb-3 (2005 WL 1124589, at *1). Though against the Department of Defense, its logic extends to private actors exceeding EUA conditions, as Defendants did by penalizing refusal (TAC ¶¶ 252, 254). The TAC cites 21 CFR § 50.25, requiring "no penalty or loss of benefits" for refusal, reinforcing this right (TAC ¶ 253).

Third, the TAC plausibly pleads a violation. Defendants mandated EUA products without informing Plaintiffs of refusal options or alternatives, imposing termination threats (e.g., Category 1's Mark South faced unpaid leave; Category

4's Elizabeth Stoneking lost opportunities) (TAC ¶¶ 76, 81, 254). This "engendered a hostile working environment" and "forced Plaintiffs into an impossible decision" (TAC ¶ 255), breaching § 360bbb-3's mandate. *Iqbal* requires only a "reasonable inference" of liability (556 U.S. at 678); the TAC's specifics—dates (October 5, 2021, mandate; March 8, 2022, threats), actions (emails, masks), and harms (distress, adverse effects)—exceed this (TAC ¶¶ 65, 76, 126). The court's reliance on *Markland* ignored these facts, misreading Rumsfeld as irrelevant (ECF No. 88 at 5). *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020), cited in the TAC, affirms constitutional limits even in pandemics (TAC ¶ 249), bolstering the claim's viability.

The district court's dismissal with prejudice, deeming amendment futile after three attempts (ECF No. 88 at 5-6), abuses discretion under Fed. R. Civ. P. 15(a)(2). *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004), allows denial only if amendment is futile; here, Count XI's novel EUA claim, supported by *Rumsfeld* and the TAC's specificity, merits survival. Other courts' dismissals (*e.g.*, *Draper v. United Airlines, Inc.*, No. 22-cv-02985, 2023 WL 3002478 (D. Colo. Apr. 19, 2023)) lack Eleventh Circuit precedent, and *Markland*'s unpublished status limits its weight. Reversal is warranted to adjudicate this plausible federal claim.

## VII. CONCLUSION

This Court should reverse the district court's dismissal and remand for proceedings on the TAC's merits against Atlas Air and FSI.

Dated: March 10, 2025                           Respectfully Submitted,

**ANTHONY F. SABATINI, ESQ.**
**FL BAR No. 1018163**
**SABATINI LAW FIRM, P.A.**
**411 N Donnelly Street, Suite 313**
**Mount Dora, FL 32757**
**T: (352) 455-2928**
**anthony@sabatinilegal.com**

**Andrew M. Green**
**JOHN PIERCE LAW P.C.**
(***Pro Hac Vice*** **for Oral Argument Pending)**
**21550 W. Oxnard Street, 3rd Floor**
**Woodland Hills, CA 91367**
**(516) 474-4278**
**andrew@johnpiercelaw.com**
**Attorney for *Plaintiffs–Appellants***

**CERTIFICATE OF COMPLIANCE WITH**
**FRAP RULE 32(g)**

The undersigned, counsel of record for the *Plaintiffs-Appellants*, PATRICK

AKERLUND, et al., furnishes the following in compliance with F.R.A.P Rule

32(g):

I hereby certify that this brief conforms to the rules contained in F.R.A.P

Rule 32(g) for a brief produced with a proportionally spaced font.

The length of this brief is 11,126 words.

Dated: March 10, 2025

_____
Andrew Mark Green, Esq.
**JOHN PIERCE LAW P.C.**
21550 W. Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
Tel: (516) 474-4278
andrew@johnpiercelaw.com
*Attorney for the Plaintiffs-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Brief of *Plantiffs-Appellants* PATRICK AKERLUND, et al. and the annexed Required Appendix have been filed in the Office of the Clerk for the United States Court of Appeals for the Eleventh Circuit, in electronic form on March 10, 2025. I further certify that counsel for all parties are participants in this Court's electronic filing system and have been sent a copy through the court's electronic filing system.

_____
Andrew Mark Green, Esq.
**JOHN PIERCE LAW P.C.**
21550 W. Oxnard Street, 3rd Floor
Woodland Hills, CA 91367
Tel: (516) 474-4278
andrew@johnpiercelaw.com
*Attorney for the Plaintiffs-Appellants*