No. 24-11033

―――――――――――

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

―――――――――――

ESTATE OF LANE CAVINESS, *et al.*,

*Plaintiffs-Appellants*,

v.

ATLAS AIR, INC., *et al.*,

*Defendants-Appellees.*

―――――――――――

On Appeal from the United States District Court
for the Southern District of Florida,
Case No. 1:22-cv-23519-KMM

―――――――――――

## RESPONSE BRIEF FOR
## DEFENDANT-APPELLEE ATLAS AIR, INC.

―――――――――――

| | |
|---|---|
| Jonathan Linas | Alexander V. Maugeri |
| JONES DAY | *Lead Counsel* |
| 110 N. Wacker Dr., Ste. 4800 | JONES DAY |
| Chicago, IL 60606 | 250 Vesey Street |
| (312) 782-3939 | New York, NY 10281 |
| jlinas@jonesday.com | (212) 326-3880 |
| | amaugeri@jonesday.com |
| | |
| Brett Wierenga | Eliot Pedrosa |
| JONES DAY | JONES DAY |
| 51 Louisiana Ave NW | 600 Brickell Ave, Ste. 3300 |
| Washington, D.C. | Miami, FL 33131 |
| (202) 879-3939 | (305) 714-9700 |
| bwierenga@jonesday.com | epedrosa@jonesday.com |

*Counsel for Defendant-Appellee Atlas Air, Inc.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1, .1-2, and .1-3, Defendant-Appellant Atlas Air, Inc. (Atlas) provides the following Certificate of Interested Persons and Corporate Disclosure Statement:

1.    Abarca Torres, Ricardo (Plaintiff-Appellant).

2.    AHVF II (Rand Stock AIV), LLC (parent of Defendant-Appellee Atlas Air, Inc.).

3.    Akerlund, Patrick (Plaintiff-Appellant).

4.    Alzati, Michael (Plaintiff-Appellant).

5.    Anderson, Eric W. (Plaintiff-Appellant).

6.    AP Rand Holdings, LLC (parent of Defendant-Appellee Atlas Air, Inc.).

7.    APX (Rand Stock AIV), LLC (parent of Defendant-Appellee Atlas Air, Inc.).

8.    Atlas Air, Inc. (Defendant-Appellee).

9.    Atlas Air Worldwide Holdings, Inc. (parent of Defendant-Appellee Atlas Air, Inc.).

C-1 of 3

No. 24-11033
*Estate of Lane Caviness, et al.  v. Atlas Air, Inc., et al.*

10.     Ballard Jr., Michael G. (Plaintiff-Appellant).

11.     Barrionuevo, Cindy (Plaintiff-Appellant).

12.     Bearce Jr., Larry James (Plaintiff-Appellant).

13.     Bellman, Robert (Plaintiff-Appellant).

14.     Bendiburg, Benjamin (Plaintiff-Appellant).

15.     Berry, Douglas (Plaintiff-Appellant).

16.     Berry, Gregory (Plaintiff-Appellant).

17.     Bohnert, Douglas (Plaintiff-Appellant).

18.     Botha, Lynette (Plaintiff-Appellant).

19.     Buehrer, Caleb (Plaintiff-Appellant).

20.     Bullock, Richard (Plaintiff-Appellant).

21.     Carlson, Jeffrey (Former Defendant).

22.     Carroll, Jon (Plaintiff-Appellant).

23.     Caskey, Vergil (Plaintiff-Appellant).

24.     Castor, James (Plaintiff-Appellant).

25.     Chapman, Brett L. (Plaintiff-Appellant).

26.     Charboneau, Nathan (Plaintiff-Appellant).

27.     Churchel, Shawn (Plaintiff-Appellant).

28. Cole, Scott, Kissane, P.A. (law firm of Counsel for Defendant-Appellee Flight Services International, LLC).

29. Cole, Scott A. (Counsel for Defendant-Appellee Flight Services Inaternational, LLC).

30. Colon, Joel (Plaintiff-Appellant).

31. Connor, Mark (Plaintiff-Appellant).

32. Cronauer, Matthew (Plaintiff-Appellant).

33. Cunningham, Fred (Plaintiff-Appellant).

34. Danza, Royal (Plaintiff-Appellant).

35. De Sousa, Elliot (Plaintiff-Appellant).

36. Desandro, Eric (Plaintiff-Appellant).

37. Dietrich, John W. (Former Defendant).

38. Dixon, Steve (Plaintiff-Appellant).

39. Dorsey & Whitney LLC (law firm of Counsel for former Defendant EncompassAir, LLC ).

40. EncompassAir, LLC (Former Defendant).

41. Erickson, James (Plaintiff-Appellant).

42. Esquivia, Luis (Plaintiff-Appellant).

No. 24-11033

*Estate of Lane Caviness, et al.  v. Atlas Air, Inc., et al.*

43.    Estate of Lane Caviness (Plaintiff-Appellant).

44.    Estes, Lee (Plaintiff-Appellant).

45.    Fleischer Louis, Lauren (Magistrate Judge, United States District Court for the Southern District of Florida).

46.    Flight Services International, LLC (Defendant-Appellee).

47.    Fratti, Robert  (Plaintiff-Appellant).

48.    Frisbie, Jason (Plaintiff-Appellant).

49.    Frye, Timothy (Plaintiff-Appellant).

50.    Fussle, Jonathan (Plaintiff-Appellant).

51.    Gamboa, Tony (Plaintiff-Appellant).

52.    Gebhard, Dennis (Plaintiff-Appellant).

53.    Ghods, Reza (Plaintiff-Appellant).

54.    Gilman, Mark (Plaintiff-Appellant).

55.    Giudice, Robert (Plaintiff-Appellant).

56.    Goodwin-Peters, Patricia (Former Defendant).

57.    Gordon, Eric (Plaintiff-Appellant).

58.    Gordon, Greg (Plaintiff-Appellant).

59.    Green, Matthew Alexander (Counsel for Defendant-Appellee

Flight Services International, LLC).

60.    Greer, Daniel (Plaintiff-Appellant).

61.    Grisham, Michael A. (Counsel for former Defendant

EncompassAir, LLC).

62.    Hartsell, Gabriel Matthew (Counsel for former Defendant

EncompassAir, LLC).

63.    Heivilin, Rexford T. (Plaintiff-Appellant).

64.    Henning, Jason (Plaintiff-Appellant).

65.    Hewson III, David (Plaintiff-Appellant).

66.    Hill City Fund I, LLC (parent of Defendant-Appellee Atlas Air,

Inc.).

67.    Hogan, Michelle (Counsel for Defendant-Appellee Atlas Air, Inc.).

68.    Hontz, Todd (Plaintiff-Appellant).

69.    Hudson, Daniel (Plaintiff-Appellant).

70.    JFL-Rand Partners, LLC (parent of Defendant-Appellee Atlas Air,

Inc.).

71.    John Pierce Law PC (law firm of Counsel for Plaintiffs-

Appellants).

72.    Jones Day (law firm of Counsel for Defendant-Appellee Atlas Air,

Inc.).

73.    Justice Roger (Plaintiff-Appellant).

74.    Kassandji Venancius (Plaintiff-Appellant).

75.    Kearins, John (Plaintiff-Appellant).

76.    Keen, David (Plaintiff-Appellant).

77.    Kinder, Ricky (Plaintiff-Appellant).

78.    Kirby, Beth (Plaintiff-Appellant).

79.    Koustas, Andreas N. (Plaintiff-Appellant).

80.    Kravetz, Chad (Plaintiff-Appellant).

81.    Lee, Daniel (Plaintiff-Appellant).

82.    Linas, Jonathan M. (Counsel for Defendant-Appellee Atlas Air,

Inc.).

83.    Lindberg, Carl (Plaintiff-Appellant).

84.    Loschiavo, Joseph (Plaintiff-Appellant).

85.    Lutz, Andrew (Plaintiff-Appellant).

86.   Lutz, Blythe (Plaintiff-Appellant).

87.   Macario, Rafael (Plaintiff-Appellant).

88.   Maugeri, Alexander V. (Counsel for Defendant-Appellee Atlas Air, Inc.).

89.   Mayo Jr., Douglas P. (Plaintiff-Appellant).

90.   McMillan, Montague (Plaintiff-Appellant).

91.   McQuillen, April (Plaintiff-Appellant).

92.   McQuillen, Christopher (Plaintiff-Appellant).

93.   Meissner, Steven (Plaintiff-Appellant).

94.   Michonski, Jeffrey (Plaintiff-Appellant).

95.   Mickler, Andrew (Plaintiff-Appellant).

96.   Moore, K. Michael (Judge, United States District Court for the Southern District of Florida).

97.   Morris, Corey (Plaintiff-Appellant).

98.   Muratore, Steven (Plaintiff-Appellant).

99.   Myers, Gregory (Plaintiff-Appellant).

100.   Napora, Peter (Plaintiff-Appellant).

101.   Pardo, Joel (Plaintiff-Appellant).

*Estate of Lane Caviness, et al.  v. Atlas Air, Inc., et al.*

102.  Phillips, Lance (Plaintiff-Appellant).

103.  Phillips, Patrick (Plaintiff-Appellant).

104.  Pedrosa, Eliot (Counsel for Defendant-Appellee Atlas Air, Inc.).

105.  Pierce, John M. (Counsel for Plaintiffs-Appellants).

106.  Pittet, Siegfried (Plaintiff-Appellant).

107.  Pronk, Glen (Plaintiff-Appellant).

108.  Rand Intermediate, LLC (parent of Defendant-Appellee Atlas Air, Inc.).

109.  Rand Intermediate Holdco, LLC (parent of Defendant-Appellee Atlas Air, Inc.).

110.  Rand Management Holdco, LLC (parent of Defendant-Appellee Atlas Air, Inc.).

111.  Rand Midco, LLC (parent of Defendant-Appellee Atlas Air, Inc.).

112.  Rand Parent, LLC (parent of Defendant-Appellee Atlas Air, Inc.).

113.  Rand Topco, LLC (parent of Defendant-Appellee Atlas Air, Inc.).

114.  Randall, Charles (Plaintiff-Appellant).

115.  Raymond, Peter (Plaintiff-Appellant).

116.  Roberts, Joshua (Plaintiff-Appellant).

117.  Robertson, Rebecca (Plaintiff-Appellant).

118.  Rogers, Jason (Plaintiff-Appellant).

119.  Sabatini, Anthony Frank (Counsel for Plaintiffs-Appellants).

120.  Sabatini Law Firm P.A. (law firm of Counsel for Plaintiffs-

Appellants).

121.  Samson, Gregory (Plaintiff-Appellant).

122.  Schreck, Kimberly (Plaintiff-Appellant).

123.  Serritella, William (Plaintiff-Appellant).

124.  Shelton, Gentry (Plaintiff-Appellant).

125.  Snaza, Todd (Plaintiff-Appellant).

126.  Sorrentino, Donald (Plaintiff-Appellant).

127.  South, Mark (Plaintiff-Appellant).

128.  Stark, Michael (Plaintiff-Appellant).

129.  Staton, Austin (Plaintiff-Appellant).

130.  Stein, Francesca M. (Appellate Counsel for Defendant-Appellee

Flight Services International, LLC).

131.  Stoneking, Elizabeth (Plaintiff-Appellant).

132.  Stowells, Forrest (Plaintiff-Appellant).

133.  Surber, Barbara Janeice (Plaintiff-Appellant).

134.  Swift, John (Plaintiff-Appellant).

135.  Taylor, Nick (Plaintiff-Appellant).

136.  Thien, Mark (Plaintiff-Appellant).

137.  Thompson, William (Plaintiff-Appellant).

138.  Thoroughman, Brandon (Plaintiff-Appellant).

139.  Tonda, Geri (Plaintiff-Appellant).

140.  Verdes, Gustavo (Plaintiff-Appellant).

141.  Villella, James (Plaintiff-Appellant).

142.  Vine, S. Jonathan (Counsel for Defendant-Appellee Flight Services International, LLC).

143.  Wierenga, Brett (Counsel for Defendant-Appellee Atlas Air, Inc.)

144.  Zarrabian, Farshad (Plaintiff-Appellant).

In addition, Defendant-Appellee Atlas Air, Inc. makes the following Corporate Disclosure Statement pursuant to Federal Rule of Appellate Procedure 26.1.

Atlas Air, Inc. is a wholly owned subsidiary of Atlas Air Worldwide Holdings, Inc. Atlas Air Worldwide Holdings, Inc. is a wholly owned

subsidiary of Rand Parent, LLC. Rand Parent, LLC is a wholly owned subsidiary of Rand Midco, LLC. Rand Midco, LLC is a wholly owned subsidiary of Rand Intermediate Holdco, LLC. Rand Intermediate Holdco, LLC is a wholly owned subsidiary of Rand Intermediate, LLC. Rand Intermediate, LLC is a wholly owned subsidiary of Rand Topco, LLC. Rand Topco, LLC is owned by Rand Management Holdco, LLC (100% incentive stock), JFL-Rand Partners, LLC (24.04% common stock), AP Rand Holdings, LLC (60.9% common stock), and Hill City Fund I, LLC (14.79% common stock).  Management ownership makes up 0.27% of the Rand Topco, LLC common stock.  Rand Management Holdco, LLC, JFL-Rand Partners, LLC, Hill City Fund I, LLC have no parent corporations and no publicly held corporation owns 10% or more of their stock.

AP Rand Holdings, LLC is owned by AP X (Rand Stock AIV), LLC (87.97% common stock) and AHVF II (Rand Stock AIV), LLC (12.03% common stock). AP X (Rand Stock AIV), LLC and AHVF II (Rand Stock AIV), LLC have no parent corporations and no publicly held corporation owns 10% or more of their stock.

# STATEMENT REGARDING ORAL ARGUMENT

Atlas Air, Inc. respectfully submits that the judgment of dismissal should be affirmed on the basis of controlling authority, such that the case need not be orally argued. Counsel for Atlas Air, Inc. would be pleased to present oral argument should the Court deem it useful.

## TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT.................................................................1

STATEMENT REGARDING ORAL ARGUMENT........................................... i

TABLE OF CITATIONS .....................................................iv

INTRODUCTION ...........................................................1

STATEMENT OF JURISDICTION ..........................................4

STATEMENT OF THE ISSUES ...........................................4

STATEMENT OF THE CASE ...........................................5

    A.    Factual Background. ...........................................5

    B.    Procedural History before the District Court................................6

    C.    Procedural History before this Court. ...........................................8

STANDARD OF REVIEW ...........................................9

SUMMARY OF ARGUMENT ...........................................10

ARGUMENT ...........................................13

I.    The District Court Correctly Held It Lacked Personal Jurisdiction Over Atlas with Respect to Claims by Out-of-State Plaintiffs. ...........................................14

    A.    Atlas is not subject to general jurisdiction in Florida. ...............16

    B.    Atlas is not subject to specific jurisdiction with respect to claims by Plaintiffs who neither live nor work in Florida. .......20

    C.    The District Court did not abuse its discretion in refusing to grant discovery or an evidentiary hearing on jurisdiction.................................................................24

II.    The District Court Correctly Held That Plaintiffs Failed to State a Claim for Invasion of Privacy. ...........................................27

III.    The District Court Correctly Held That Plaintiffs Failed to State a Title VII Claim for Hostile Work Environment Harassment..........33

ii

**TABLE OF CONTENTS**

(continued)

**Page**

IV.   The District Court Correctly Held That Plaintiffs Failed to State a Claim for Violation of Their Constitutional Rights. ..........................39

    A.   No cause of action under Section 1983 or Bivens .......................39

    B.   No constitutional violation, in any event ...................................41

V.   The District Court Properly Held That Plaintiffs Failed to State a Claim for Intentional or Negligent Infliction of Emotional Distress. ..........................................................................................44

VI.   The District Court Correctly Held That Plaintiffs Failed to State a Claim for Negligence. ..........................................................................48

VII.   The District Court Correctly Held That Plaintiffs Failed to State a Claim under the Emergency Use Authorization Provision. ............50

CONCLUSION     .......................................................55

# TABLE OF CITATIONS

**Page(s)**

**CASES**

*ACLU of Fla., Inc. v. City of Sarasota*,
859 F.3d 1337 (11th Cir. 2017)........................................................25

*Anderson v. United Airlines, Inc.*,
2023 WL 5721594 (N.D. Ill. Sept. 5, 2023), *appeal pending*, No.
24-1626 (7th Cir.) ........................................................6, 35

*Anderson v. United Airlines, Inc.*,
2024 WL 1555496 (N.D. Ill. Apr. 10, 2024)..................................52

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................9, 32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................9

*Bivens v. Six Unknown Fed. Narcotics Agents*,
403 U.S. 388 (1971)......................................................11, 39, 40, 41

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020)................................................................35

*Bristol-Myers Squibb Co. v. Superior Ct. of California*,
582 U.S. 255 (2017)........................................................14, 15, 20

*Brown v. Royal Carib. Cruises, Ltd.*,
2017 WL 3773709 (S.D. Fla. Mar. 17, 2017) ...............................45

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001)................................................................51

*Cape Publ'ns, Inc. v. Hitchner,*
   549 So. 2d 1374 (Fla. 1989)......................................................................27, 30, 32, 33

*Carlisi v. Sprintcom, Inc.,*
   2006 WL 8432613 (S.D. Fla. Sept. 6, 2006)......................................................49

*Carmouche v. Tamborlee Mgmt., Inc.,*
   789 F.3d 1201 (11th Cir. 2015)...............................................................15, 19

*Ciraci v. J.M. Smucker Co.,*
   62 F.4th 278 (6th Cir. 2023)...................................................................40

*Clay Electric Cooperative, Inc. v. Johnson,*
   873 So. 2d 1182 (Fla. 2003).....................................................................49

*Coalition for the Abolition of Marijuana Prohibition v. City of
   Atlanta,*
   219 F.3d 1301 (11th Cir. 2000)...........................................................32, 35, 45

*Cornett v. Alabama Dep't of Transportation,*
   828 F. App'x 565 (11th Cir. 2020) (per curiam)...........................................38

*Corr. Servs. Corp. v. Malesko,*
   534 U.S. 61 (2001).....................................................................................40

*Cort v. Ash,*
   422 U.S. 66 (1975)......................................................................................51

*Cruzan v. Dir., Mo. Dep't of Health,*
   497 U.S. 261 (1990)....................................................................................43

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)...........................................................16, 18, 19, 20

*Delong Equipment Co. v. Washington Mills Abrasive Co.,*
   840 F.2d 843 (11th Cir. 1988)....................................................................26

v

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022)......................................................................42

*Doe #1-#14 v. Austin*,
  572 F. Supp. 3d 1224 (N.D. Fla. 2021).........................................41

*Doe v. Rumsfeld*,
  2005 WL 1124589 (D.D.C. Apr. 6, 2005)..................................51, 52

*Doe v. Rumsfeld*,
  297 F. Supp. 2d 119 (D.D.C. 2003)...............................................52

*Doe v. Rumsfeld*,
  341 F. Supp. 2d 1 (D.D.C. 2004)...................................................52

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015)......................................................................40

*Egbert v. Boule*,
  596 U.S. 482 (2022)......................................................................41

*Estate of McCall ex rel. McCall v. United States*,
  642 F.3d 944 (11th Cir. 2011).......................................................43

*Evans v. N.Y.C. Health & Hosps. Corp.*,
  2023 WL 5920189 (S.D.N.Y. Aug. 7, 2023) .................................53

*Finkbeiner v. Geisinger Clinic*,
  2022 WL 3702004 (M.D. Penn. Aug. 26, 2022) ...........................46

*Florida v. HHS*,
  19 F.4th 1271 (11th Cir. 2021).......................................................41

*Gilles-Jean v. Royal Caribbean Cruises, Ltd.*,
  2023 WL 6973586 (S.D. Fla. Aug. 28, 2023).................................19

*Gracey v. Eaker,*
    837 So. 2d 348 (Fla. 2002)..................................................................49

*Hall v. Dekalb Cnty. Gov't,*
    503 F. App'x 781 (11th Cir. 2013) (per curiam).............................37

*Harms v. Miami Daily News, Inc.,*
    127 So. 2d 715 (Fla. 3d DCA 1961) ................................................29

*Harris v. Forklift Sys., Inc.,*
    510 U.S. 17 (1993)..............................................................................38

*Hart v. United States,*
    894 F.2d 1539 (11th Cir. 1990)........................................................46

*Harvey v. Harvey,*
    949 F.2d 1127 (11th Cir. 1992)........................................................39

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984)............................................................................18

*Henry v. DeSantis,*
    461 F. Supp. 3d 1244 (S.D. Fla. 2020) ...........................................43

*Hindman v. Healy,*
    278 F. App'x 893 (11th Cir. 2008) (per curiam)............................40

*Holland v. Carnival Corp.,*
    50 F.4th 1088 (11th Cir. 2022)...........................................................9

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ...........................................49

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905)........................................................................41, 42

*Jastrjembskaia v. inCruises, LLC,*
   2024 WL 5244786 (11th Cir. Dec. 30, 2024) (per curiam) ...........................20

*Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.,*
   2023 WL 2632813 (S.D. Ga. Mar. 24, 2023)....................................................23

*Jews For Jesus, Inc. v. Rapp,*
   997 So. 2d 1098 (Fla. 2008)............................................................................30

*Keeton v. Hustler Magazine, Inc.,*
   465 U.S. 770 (1984)........................................................................................23

*Kheriaty v. Regents of the Univ. of Cal.,*
   2022 WL 17175070 (9th Cir. Nov. 23, 2022) .................................................42

*Klaassen v. Trs. of Ind. Univ.,*
   7 F.4th 592 (7th Cir. 2021).............................................................................41

*Koutsouradis v. Delta Air Lines, Inc.,*
   427 F.3d 1339 (11th Cir. 2005)..................................................................13, 47

*Leake v. Raytheon Techs. Corp.,*
   2023 WL 2242857 (D. Ariz. Feb. 27, 2023)..............................................30, 35

*Legaretta v. Macias,*
   603 F. Supp. 3d 1050 (D.N.M. 2022) ........................................................52, 53

*Licciardello v. Lovelady,*
   544 F.3d 1280 (11th Cir. 2008).................................................................19, 23

*Lloyd v. Sch. Bd. of Palm Beach Cnty.,*
   570 F. Supp. 3d 1165 (S.D. Fla. 2021) ...........................................................46

*L.P. v. Marian Catholic High Sch.,*
   852 F.3d 690 (7th Cir. 2017)...........................................................................40

viii

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013)..................................................................14

*Maddox v. Aldridge Pite, LLP*,
  2024 WL 1475463 (11th Cir. Apr. 5, 2024).....................................................22

*Mallory v. Norfolk Southern Railway Co.*,
  600 U.S. 122 (2023)................................................................................19, 20

*Markland v. Insys Therapeutics, Inc.*,
  758 F. App'x 777 (11th Cir. 2018) ...................................................................51

*McArthur v. Brabrand*,
  610 F. Supp. 3d 822 (E.D. Va. 2022) ..............................................................54

*McCain v. Florida Power Corp.*,
  593 So. 2d 500 (Fla. 1992)............................................................................49

*Mendoza v. Borden, Inc.*,
  195 F.3d 1238 (11th Cir. 1999)......................................................................37

*Moore v. Pederson*,
  806 F.3d 1036 (11th Cir. 2015)......................................................................45

*N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*,
  124 F.4th 1322 (11th Cir. 2025)..................................................................9, 24

*Negron v. CitiMortgage Inc.*,
  2016 WL 10953267 (S.D. Fla. Oct. 19, 2016) ...................................................47

*Norris v. Stanley*,
  73 F.4th 431 (6th Cir. 2023)......................................................................42, 53

*Pace v. Cirrus Design Corp.*,
  93 F.4th 879 (5th Cir. 2024)..........................................................................20

ix

*Parke v. Delta Air Lines, Inc.*,
   2025 WL 487806 (M.D. Fla. Feb. 13, 2025)......................................................45

*Parker v. Town of Palm Beach*,
   2017 WL 11537901 (S.D. Fla. Aug. 16, 2017)...................................................33

*Perkins v. Benguet Consolidated Mining Co.*,
   342 U.S. 437 (1952)...........................................................................................16

*Pettaway v. Equifax Info. Servs., LLC*,
   2020 WL 10229077 (N.D. Ga. Aug. 7, 2020)...................................................24

*Posner v. Essex Insurance Co.*,
   178 F.3d 1209 (11th Cir. 1999) (per curiam)...........................................25, 26

*Post-Newsweek Stations Orlando, Inc. v. Guetzloe*,
   968 So. 2d 608 (Fla. Dist. Ct. App. 2007) .......................................................31

*Regions Bank v. Kaplan*,
   2021 WL 4852268 (11th Cir. Oct. 19, 2021).....................................28, 29, 32

*Regueiro v. Am. Airlines, Inc.*,
   2022 WL 2352414 (S.D. Fla. June 30, 2022)...................................................17

*Resolution Trust Corp. v. Dunmar Corp.*,
   43 F.3d 587 (11th Cir. 1995)............................................................................46

*Schmidt v. City of Pasadena*,
   2023 WL 4291440 (C.D. Cal. Mar. 8, 2023)....................................................53

*Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*,
   363 F.3d 299 (4th Cir. 2004).....................................................................35, 36

*Sharikov v. Philips Med. Sys. MR, Inc.*,
   2023 WL 2390360 (N.D.N.Y. Mar. 7, 2023) ..................................................30

x

*Snow v. DirecTV, Inc.*,
　　450 F.3d 1314 (11th Cir. 2006)...............................................................14, 25

*Spilfogel v. Fox Broadcasting Co.*,
　　433 F. App'x 724 (11th Cir. 2011) (per curiam)....................................27, 29

*Stokes v. Liberty Mutual Insurance Co.*,
　　213 So. 2d 695 (Fla. 1968).........................................................................49

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
　　447 F.3d 1357 (11th Cir. 2006)..............................................................18, 19

*United States v. Blanco*,
　　102 F.4th 1153 (11th Cir. 2024)..................................................................19

*United States v. Harding*,
　　104 F.4th 1291 (11th Cir. 2024)..................................................................45

*United Techs. Corp. v. Mazer*,
　　556 F.3d 1260 (11th Cir. 2009)...............................................................25, 26

*US Freedom Flyers, et al. v. Atlas Air, Inc. et al.*,
　　No. 1:22-cv-21477, Dkt. No. 1 (S.D. Fla. May 12, 2022)...............................6

*Waite v. All Acquisition Corp.*,
　　901 F.3d 1307 (11th Cir. 2018).............................................................*passim*

*Walden v. Centers for Disease Control & Prevention*,
　　669 F.3d 1277 (11th Cir. 2012)....................................................................40

*Walden v. Fiore*,
　　571 U.S. 277 (2014)....................................................................................20

*Washington v. Glucksberg*,
　　521 U.S. 702 (1997)................................................................................42, 43

xi

*We The Patriots USA, Inc. v. Hochul,*
  17 F.4th 266 (2d Cir. 2021)................................................................43

*Williams v. City of Minneola,*
  575 So. 2d 683 (Fla. Dist. Ct. App. 1991) .......................................28

*Williams v. Motorola, Inc.,*
  303 F.3d 1284 (11th Cir. 2002)........................................................34

*Zell v. Meek,*
  665 So. 2d 1048 (Fla. 1995)..............................................................48

*Zucht v. King,*
  260 U.S. 174 (1922)...........................................................................42

**STATUTES**

10 U.S.C. § 1107................................................................................52

21 U.S.C. § 337............................................................................50, 51

21 U.S.C. § 360bbb-3.............................................................8, 50, 53

42 U.S.C. § 1983.......................................................................11, 39, 40

42 U.S.C. § 2000e-5 ........................................................................38

Fla. Stat. § 48.193.............................................................................15

## INTRODUCTION

Plaintiffs are 84 Atlas Air, Inc. (Atlas) employees and five Flight Services International, LLC (FSI) employees who disapprove of how the nation, especially the federal government, responded to the COVID-19 pandemic. Plaintiffs object to the COVID-19 vaccines, which they regard as "unknown, experimental substance[s] of questionable efficacy" and object to "mask wearing," which they decry as "useless in inhibiting the spread of COVID-19." Doc. 63 (Second Amended Complaint) ¶ 5. They disagree with "the Biden Administration's goal of achieving universal vaccination" (*id.* ¶ 133) and view the Food and Drug Administration as having rushed the vaccines' approval "pursuant to Emergency Use Authorizations (EUA)'s" (*id.* ¶ 54).

However, regardless of any genuinely felt objections Plaintiffs may have had to the *government's* pandemic policy, they lack any valid claim against their *employer*. By their own admission, Atlas viewed vaccination as "a personal choice" and adopted its vaccine policies only after the President mandated it of federal contractors, such as Atlas. *Id.* ¶¶ 60-61. Plaintiffs do not allege that any of them missed work or lost their jobs by remaining

1

unvaccinated—instead, Atlas accommodated anyone with a religious or medical objection by allowing the employee to mask and test. *Id.* ¶¶ 76, 83.

Plaintiffs have cycled through a laundry list of federal, state, and constitutional claims across four complaints but, as the District Court recognized, they have not satisfied the elements of these claims. Indeed, to conclude that Atlas allegedly invaded Plaintiffs' privacy, harassed them, committed negligence, or inflicted emotional distress, would require accepting that so, too, did thousands-upon-thousands of employers during the pandemic who gave their employees the choice to become vaccinated or, if they were religiously opposed to or medically prevented from the vaccine, to mask and test. None of these causes of action sanction that result, and Plaintiffs' other claims—under the U.S. Constitution and EUA—concern the federal government, not Atlas. On appeal, Plaintiffs contest this conclusion, but their arguments are cluttered with unalleged facts, misstated holdings, and fictitious precedents.[1]

Moreover, these 89 plaintiffs hail from across the country, and over half of them neither live nor work in Florida. As such, the District Court

---

[1] Atlas was unable to locate eight cases cited by Plaintiffs, as discussed below. *See infra* p. 13.

correctly held it lacked personal jurisdiction over Atlas—a Delaware corporation headquartered in New York—for those Plaintiffs' claims.

This Court should affirm the District Court's judgment dismissing 47 Atlas Plaintiffs' claims due to lack of personal jurisdiction and dismissing the entire complaint for failure to state a claim.

## STATEMENT OF JURISDICTION

Atlas contended below, and the District Court agreed, that the District Court lacked personal jurisdiction consistent with due process over Atlas with respect to claims of Plaintiffs who neither live nor work in Florida.

Atlas does not dispute Plaintiffs' statement regarding the District Court's jurisdiction over the remaining claims against Atlas and regarding this Court's jurisdiction on appeal. *See* Open. Br. 10.

## STATEMENT OF THE ISSUES

1.    Whether the District Court correctly ruled that it lacked personal jurisdiction, consistent with due process, over Atlas with respect to the claims of Plaintiffs who neither live nor work in Florida.

2.    Whether the District Court correctly dismissed all of the claims against Atlas for failure to state a claim after it gave Plaintiffs three opportunities to replead.

## STATEMENT OF THE CASE

### A.    Factual Background.

Plaintiffs are 89 pilots, flight attendants, and ground staff who work for Atlas or co-defendant Flight Services International, LLC (FSI). Doc. 73 (Order on Mot. to Dismiss) at 1.

During the heart of the pandemic, and in compliance with the federal government's vaccination mandate for federal contractors like Atlas, Atlas instituted a policy requiring its employees to receive the vaccine unless they obtained an accommodation for medical or religious reasons. Doc. 63 (Second Amended Complaint or "SAC") ¶¶ 61, 64. Atlas allowed all unvaccinated employees with a religious or medical accommodation to continue working, at all relevant times, if they wore a mask and tested for COVID-19. *Id.* ¶¶ 76, 83-84.

According to the complaint, all of the Plaintiffs share the same religious objection to COVID-19 vaccines. *Id.* ¶ 46. They regard COVID-19 masks as "useless" and "political symbols." *E.g., id.* ¶ 95. Most Plaintiffs remain unvaccinated, but a subset became vaccinated. *Id.* ¶¶ 12-14.

5

### B.    Procedural History before the District Court.

This suit is the second that Plaintiffs have filed challenging Atlas's response to the COVID-19 pandemic.  In May 2022, Plaintiffs and the association US Freedom Flyers sued Atlas and several of Atlas's executives, as well as FSI, in the Southern District of Florida, asserting similar claims. *See US Freedom Flyers, et al. v. Atlas Air, Inc. et al.*, No. 1:22-cv-21477, Dkt. No. 1 (S.D. Fla. May 12, 2022).  They voluntarily dismissed that case in July 2022 (*id.* Dkt. No. 25), before filing this lawsuit against Atlas and FSI several months later.[2]

Plaintiffs repeatedly shifted their causes of action asserted below.  The operative complaint on appeal presents six counts consisting of claims under or for (i) invasion of privacy, (ii) hostile work environment under Title VII, (iii) the  U.S. Constitution, (iv) intentional  and/or  negligent  infliction  of emotional    distress,    (vi) negligence,    and    (vii) the    Emergency    Use Authorization ("EUA") provision.  Plaintiffs previously asserted but later

---

[2] One of the firms representing Plaintiffs in this case, John Pierce Law P.C., also filed a similar COVID-19 lawsuit against another airline that likewise was dismissed for failure to state a claim. *Anderson v. United Airlines, Inc.*, 2023 WL 5721594, at *1 (N.D. Ill. Sept. 5, 2023), *appeal pending*, No. 24-1626 (7th Cir.).

abandoned claims under the Florida Whistleblower Act, the Americans with Disabilities Act and Rehabilitation Act, the Genetic Information Non-Discrimination Act, and under Atlas's collective bargaining agreements. *See* Doc. 39 (First Amended Complaint) at Counts III, IV, IX, and XI.

Defendants moved to dismiss for lack of personal jurisdiction and for failure to state a claim. Doc. 31. Attached to that motion (and to later motions to dismiss) were declarations from Atlas and FSI employees setting forth facts relevant to the District Court's lack of personal jurisdiction. Doc. 31-1, 31-2, 43-1, 43-2 66-2, 67.

Rather than respond to the motion, Plaintiffs filed a first amended complaint. Doc. 39. Defendants again moved to dismiss. Doc. 43. The District Court dismissed the complaint as a "quintessential shotgun pleading." Doc. 59 at 2.

Plaintiffs thereafter filed a second amended complaint ("SAC"), which Defendants again moved to dismiss. Doc. 66. The District Court granted the motion to dismiss, holding that it lacked personal jurisdiction over FSI with respect to all claims against it, and over Atlas with respect to claims against it by Plaintiffs who neither live nor work in Florida. Doc. 73 at 4-10. The

District Court dismissed the remaining claims against Atlas for failure to state a claim, due to factual and legal deficiencies. Doc. 73 at 10-15.

Plaintiffs then filed a third amended complaint ("TAC"). The sole difference between the SAC and TAC was the addition of a claim under the federal EUA, 21 U.S.C. § 360bbb-3. Given the District Court's earlier order dismissing the SAC, the parties stipulated that FSI had no duty to answer the TAC and that Atlas need respond only to the newly-added EUA claim. Doc. 79-1; Doc. 80. Atlas moved to dismiss for failure to state a claim under the EUA. Doc. 81. The District Court granted that motion on March 19, 2024, this time dismissing Plaintiffs' complaint "with prejudice," finding that Plaintiffs had already amended their complaint three times and that further amendment "would be futile." Doc. 88 at 5-6.[3]

### C.    Procedural History before this Court.

The District Court entered final judgment on March 19, 2024. Doc. 89. Plaintiffs timely noticed an appeal on April 3, 2024. Dkt. 1.

This Court dismissed the appeal for lack of prosecution on May 28, 2024, after Plaintiffs failed to file various case-opening documents. Dkt. 11.

---

[3] Atlas refers in this brief to the SAC, except where necessary to address the EUA count only found in the TAC.

Plaintiffs moved to reinstate the appeal, which the Court granted on November 27, 2024.  Dkt. 19.

## STANDARD OF REVIEW

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and the district court grants that motion without holding an evidentiary hearing, this Court reviews the district court's determination de novo.  *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025).  If the defendant submits affidavits in support of its position, the burden shifts to the plaintiff to produce evidence supporting jurisdiction.  *Id.*

This Court reviews de novo a district court's decision dismissing a complaint for failure to state a claim under Rule 12(b)(6).  *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022).  A plaintiff must allege enough factual content to state a claim that is "plausible," not merely "conceivable." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court does not accept as true "threadbare recitals of the elements of a cause of action" or "conclusory statements."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## SUMMARY OF ARGUMENT

The District Court properly dismissed Plaintiffs' claims against Atlas for the reasons in its decisions (Doc. 73, 88) and in light of other deficiencies Defendants argued below.

**I.** The District Court correctly held that it lacked personal jurisdiction over Atlas with respect to the claims of Plaintiffs who do not live or work in Florida. Atlas is not subject to general jurisdiction in Florida because it is not headquartered or incorporated there, and because its Miami training facility does not constitute the kind of "exceptional" presence that would make a Delaware and New York corporation "at home" in Florida. Nor is Atlas subject to specific jurisdiction because the complaint does not allege that any of the out-of-state Plaintiffs' claims—based on vaccination, masking, or disclosure of information—arise from any Florida-based conduct by Atlas.

**II.** Plaintiffs failed to state a claim for invasion of privacy because (i) any alleged "publication" of their vaccination status was limited to other Atlas employees and (ii) wearing a COVID-19 mask does not logically reveal vaccination status. Second, vaccination status is not a "highly offensive" fact. Third, Plaintiffs' vaccination status was of "public concern," at least in the intra-company context in which it was allegedly published.

10

**III.**  Plaintiffs failed to state a Title VII hostile-work-environment claim based on religion with respect to COVID-19 vaccines.  First, Plaintiffs' own complaint makes clear that any differential treatment depended on their vaccination status, not their religious beliefs about it.  Second, the complaint fails to allege any severe or pervasive conduct so as to constitute harassment (let alone based on "religion").  Third, at least 40 Plaintiffs admit they did not exhaust their Title VII claims with the Equal Employment Opportunity Commission ("EEOC"), which constitutes a mandatory bar to a lawsuit.

**IV.**  Plaintiffs failed to state any claims for violation of their U.S. Constitutional rights under 42 U.S.C. § 1983 for claims against "state" actors, or under the *Bivens* doctrine.  First, Plaintiffs cannot use either of those cause of action to anchor constitutional claims against Atlas since *Bivens* does not authorize claims against a private corporation (even if it were not a "new context" without the necessary "special factors" to extend *Bivens*), and Section 1983 lacks application to allegations involving the federal government, rather than states.  Second, Plaintiffs lack any constitutional right, under substantive due process or otherwise, to stay unvaccinated and maintain their employment with a specific employer.

**V.** Plaintiffs failed to state any claims for intentional or negligent infliction of emotional distress. First, Atlas's vaccination policy, which tracked federal guidance, was not "outrageous" as a matter of law. Second, Plaintiffs cannot (and do not) allege Atlas's conduct was "intentional," *i.e.,* that severe distress was certain to result. Third, Plaintiffs do not allege *any* distress suffered by any Plaintiff. Fourth, Plaintiffs failed to state any claim for negligent infliction of emotional distress, because they did not allege—as that tort requires—any physical impact to their bodies by Atlas or that any Plaintiff witnessed the death of a loved one.

**VI.** Plaintiffs failed to state a claim for negligence because this claim was merely a repackaging of their insufficient intentional invasion-of-privacy claim (above), and because Florida law does not recognize a "negligent" version of that tort.

**VII.** Plaintiffs failed to allege any claim under the EUA provision. First, the Food, Drug, and Cosmetic Act expressly disclaims any private right of action to enforce its provisions, such as the EUA. Second, Atlas is not a medical provider, so the text of the EUA does not apply to it. Third, at the time Atlas mandated vaccines, at least one vaccine had been approved on a final basis. Fourth, most Plaintiffs admittedly are unvaccinated and so

12

cannot have been injured by administration of vaccines in violation of the EUA.

## ARGUMENT

Before addressing the substance of Plaintiffs' arguments, Atlas notes that it has been unable to locate and/or verify the purported holdings of eight cases Plaintiffs cite in their opening brief: *Doe v. Roe*, 638 So. 2d 87, 88 (Fla. 4th DCA 1994); *Spilfogel v. Fox Broadcasting Co.*, 792 So. 2d 1254, 1256 (Fla. 4th DCA 2001); *Doe v. University of Miami*, 2020 WL 7647634, at \*6 (S.D. Fla. Dec. 23, 2020); *Jewell v. New York Life Insurance Co.*, 2018 WL 1792348, at \*4 (M.D. Fla. Apr. 16, 2018); *Lofton v. Kravitz*, 672 So. 2d 591, 593 (Fla. 4th DCA 1996); *Tillery v. ATSI, Inc.*, 2005 WL 81628, at \*3 (11th Cir. Jan. 14, 2005); *Koutsouradis v. Delta Air Lines, Inc.*, 427 So. 2d 1105, 1107 (Fla. 3d DCA 1983); *Weinstein v. City of North Bay Village*, 977 So. 2d 703, 706 (Fla. 3d DCA 2008).

Three of these cases—*Doe v. Roe*, *Jewell*, and *Lofton*—appear not to exist at all. Although the other five have captions that correspond to the names of real cases—for example, *Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339 (11th Cir. 2005)—their citations are wrong and their facts and holdings do not match what Plaintiffs contend they say. To the extent Plaintiffs' argument on appeal rests on these cases, Atlas notes it below.

13

**I.**     **THE DISTRICT COURT CORRECTLY HELD IT LACKED PERSONAL JURISDICTION OVER ATLAS WITH RESPECT TO CLAIMS BY OUT-OF-STATE PLAINTIFFS.**

The District Court dismissed the claims of a majority of the Plaintiffs with claims against Atlas (47 out of 84) for lack of personal jurisdiction. It recognized that Atlas is not subject to general jurisdiction here because Atlas is neither incorporated nor headquartered in Florida, nor is this an "exceptional case" where Atlas is "at home" here. Doc. 73 at 5-6. The court also correctly ruled it lacked specific jurisdiction over claims by Plaintiffs who neither live nor work in Florida, because such Plaintiffs did not show that their claims relate to any Atlas contacts with Florida. *Id.* at 9-10.

In a federal-question case like this, jurisdiction over a nonresident defendant depends on satisfying both the state long-arm statute and the Due Process Clause. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006). "Florida's long-arm statute provides for both general and specific personal jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 262 (2017). To exercise specific jurisdiction, by contrast, the suit itself

14

must "arise out of or relate to the defendant's contacts with the forum." *Id.* (alterations omitted).

For general jurisdiction, Florida's long-arm statute "extends to the limits on personal jurisdiction imposed by the Due Process Clause," so this Court "need only determine whether [its] exercise of jurisdiction over [Atlas] would exceed constitutional bounds." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (citing Fla. Stat. § 48.193(2)).

For specific jurisdiction, Florida's long-arm statute subjects a defendant to claims "arising from" certain enumerated conduct in the state. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citing Fla. Stat. § 48.193(1)). Even if the statute applies, this Court applies a three-part test to determine whether exercising jurisdiction comports with due process: (1) whether the claims "arise out of or relate to" the defendant's contacts with the forum, (2) whether the defendant "purposefully availed" itself of the privilege of conducting activities in the forum, and (3) whether exercising jurisdiction would "violate traditional notions of fair play and substantial justice." *Id.* (citation omitted).

15

### A.   Atlas is not subject to general jurisdiction in Florida.

The District Court correctly found that Atlas is not subject to general jurisdiction in Florida.  Under the demanding test set forth in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), absent an "exceptional case," a corporation is "at home"—and therefore subject to general jurisdiction consistent with due process—only in the states where it is incorporated and has its principal place of business.  *Id.* at 138-39, 139 n.19.

Outside of those "'paradigm all-purpose forums,'" the plaintiff bears a "heavy burden" to establish general jurisdiction.  *Waite*, 901 F.3d at 1317 (quoting *Daimler*, 571 U.S. at 137).  The only example of such an "exceptional case" that the Supreme Court has identified was a Filipino mining company that temporarily moved to Ohio during World War II, in response to Japanese Occupation.  *Id.* (citing *Daimler*, 571 U.S. at 139 n.19; *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)).  In that case, "Ohio was 'a surrogate for the place of incorporation or head office.'"  *Id.* (quoting *Daimler*, 571 U.S. at 130 n.8).

On the other hand, a company is not subject to general jurisdiction merely because it "engages in a substantial, continuous, and systematic course of business" in the forum.  *Daimler*, 571 U.S. at 138.  Nor is it enough

16

to allege that the defendant has established a physical presence in the forum. In *Waite*, this Court held that the defendant could not "be regarded as at home in Florida" even though it "built a plant in the state," because plaintiffs did "not allege that [its] leadership was based in Florida or that the company otherwise directed its operations from Florida."    901 F.3d at 1318. Correspondingly, an airline is not subject to general jurisdiction in Florida, even if it "conducts significant business in Florida," where the airline's operations in the state are not "a 'surrogate' for [the airline's] place of incorporation or head office." *Regueiro v. Am. Airlines, Inc.*, 2022 WL 2352414, at *2 (S.D. Fla. June 30, 2022) (collecting cases rejecting general jurisdiction over airlines with a "hub" in a state).

Applying these principles, the District court correctly determined that Atlas is not subject to general jurisdiction in Florida. Doc. 73 at 5-6. Atlas is incorporated in Delaware and has its principal place of business in New York. Doc. 63 (SAC) ¶ 16. Nor is this an "exceptional case" where Florida serves as a "surrogate" for one of those paradigm forums. Plaintiffs do not allege that Atlas has its *de facto* headquarters in Florida, and the declaration submitted by Atlas refutes any such suggestion. Of Atlas's 4,311 employees, just 657 are stationed in Florida, compared with 1,347 in Kentucky, 734 in

17

New York, and hundreds more in other states. Doc. 66-2 ¶ 9. Furthermore, Atlas's principal executive offices are in New York, and nearly all of Atlas's operations are based in or led from New York or Kentucky. *Id.* ¶¶ 10-11.

Despite all this, Plaintiffs emphasize that Atlas maintains its Miami Training Center (or "MTC") in Florida, where it trains its pilots and where certain of its operations are based. Training employees in a state is not sufficiently "exceptional" to confer general jurisdiction there. *Daimler*, 571 U.S. at 139 n.19. In fact, the Supreme Court has rejected general jurisdiction based on "sending [pilot] personnel to [the forum state] for training." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–19 (1984). Plaintiffs further argue that ceasing operations at the MTC "would cause a significant and detrimental impact" on Atlas. Open. Br. 21-22; Doc. 63 (SAC) ¶¶ 17-19. But that is not the test: it is not enough merely that Atlas "engages in a substantial, continuous, and systematic course of business" in Florida. *Daimler*, 571 U.S. at 138. Nor is Atlas's physical building in Florida sufficient to establish general jurisdiction, where Plaintiffs do not allege that Atlas "directed its operations from Florida." *Waite*, 901 F.3d at 1318.

The cases Plaintiffs cite to the contrary are irrelevant or misstated. Plaintiffs point to *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,

18

447 F.3d 1357 (11th Cir. 2006), but that case is factually and legally inapposite. On the facts, it involved imputing to the defendant the contacts of a subsidiary based in Florida. *Id.* at 1362. There is no such subsidiary here. And on the law, *Stubbs* was decided before *Daimler*, and lower courts in this Circuit have "repeatedly rejected" reliance on this case law, recognizing that it "do[es] not comport with the cabined conception of general jurisdiction that now exists post-*Daimler*." *E.g.*, *Gilles-Jean v. Royal Caribbean Cruises, Ltd.*, 2023 WL 6973586, at *5 (S.D. Fla. Aug. 28, 2023) (citation omitted). Plaintiffs' reliance on *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), is also misplaced. That pre-*Daimler* decision involved the application of *specific* jurisdiction, not *general* jurisdiction. *See id.* at 1283-84. Finally, Plaintiffs misstate the holding of *Carmouche*, 789 F.3d 1201, contending that this Court "upheld general jurisdiction" based on certain facts. Open. Br. 25. In reality, the Court concluded that "the district court did not have general personal jurisdiction." 789 F.3d at 1206.[4]

---

[4] Despite claiming it below, on appeal Plaintiffs do not argue that *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023), affects this result. They have therefore forfeited that argument. *United States v. Blanco*, 102 F.4th 1153, 1167 n.8 (11th Cir. 2024). Regardless, as the District Court held (Doc. 73, at 6), *Mallory* has no relevance here. There, the Supreme Court

**B.    Atlas is not subject to specific jurisdiction with respect to claims by Plaintiffs who neither live nor work in Florida.**

The District Court also correctly found that it lacked personal jurisdiction over Atlas for claims brought by Plaintiffs who neither live nor work in Florida.

To satisfy due process, a claim must "arise out of or relate to" the defendant's contacts with the forum, among other requirements. *Waite*, 901 F.3d at 1313. In other words, it is "the defendant's suit-related conduct" itself that "must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). In a mass action like this, specific jurisdiction over a defendant must be judged as to each individual plaintiff's claims. *See Bristol-Myers*, 582 U.S. at 265 ("The mere fact that *other* plaintiffs

---

"held that Pennsylvania's registration requirements for corporations that included explicit consent to general jurisdiction did not violate due process by authorizing consent through registration." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898 (5th Cir. 2024). "*Mallory* analyzes what a state *may* require; [the court] must still examine the state law to find what it *does* require." *Id.* As the Eleventh Circuit has held—before and after *Mallory*—Florida's registration statute for foreign corporations contains no such general-jurisdiction provision. *Waite*, 901 F.3d at 1322; *Jastrjembskaia v. inCruises, LLC*, 2024 WL 5244786, at *5 (11th Cir. Dec. 30, 2024) (per curiam) (no general jurisdiction, adhering to *Waite*). Thus, *Daimler* still determines whether a "court may exercise jurisdiction over a corporate defendant that *has not consented* to suit in the forum." *Mallory*, 600 U.S. at 138.

. . . allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims.").

Here, the District Court correctly held that it lacked personal jurisdiction over Atlas as to the claims of Plaintiffs who neither live nor work in Florida.  Plaintiffs contend, for instance, that Atlas tortiously invaded their privacy and violated their constitutional rights and that Atlas created a hostile work environment related to the COVID-19 vaccine in violation of Title VII.  Doc. 63 (SAC) ¶¶ 95, 101, 133.  But nowhere in the SAC—or the three other versions of the complaint—do Plaintiffs allege that any of Atlas's purportedly unlawful conduct occurred in Florida.  The SAC does allege a few facts about the MTC in the "Parties" section of the pleading, in paragraphs 17 to 19, but without identifying any allegedly unlawful conduct occurring there.  And the body of the SAC never mentions the MTC or any other location in Florida.  *Id.* ¶¶ 53-246.  The declaration of Mark South mirrors the SAC, describing the MTC but failing to articulate how any claim arises from Atlas's conduct at that location.  *See* Doc. 69-1, Ex. 1.  In sum, as the District Court recognized, "the SAC fails to explain what, if any, illegal conduct by Atlas Air occurred in Florida during any employee's training."  Doc. 73 at 10.

On appeal, Plaintiffs try to bridge this gulf by making naked assertions about the MTC that appear nowhere in their complaint. *See* Open. Br. 28-36. For instance, they claim for the first time on appeal that Atlas sent emails "from the MTC." Open. Br. 29; *see id.* at 30 ("MTC-originated emails"); *id.* at 31-32 ("coordinated from the MTC"); *id.* at 34 ("the MTC's policies were designed and executed in Florida"). But the paragraphs of the SAC that Plaintiffs cite as a purported basis for these assertions (*i.e.*, SAC ¶¶ 64-67, 73-74 81, 95, 134) do not so much as mention the MTC. Similarly, Plaintiffs claim that Atlas required masks for exempted employees "exclusively at the MTC" and purport to identify certain Plaintiffs who wore "masks at the MTC." Open Br. 29-30. But the paragraphs of the SAC that Plaintiffs highlight (SAC ¶¶ 5, 78, 95) say nothing about the MTC or those Plaintiffs, while the paragraph about the MTC that Plaintiffs identify (SAC ¶ 17) says nothing about masks or those Plaintiffs. In sum, Plaintiffs' argument rests entirely on new allegations.

This tactic fails, as this Court does not "consider new factual allegations raised for the first time on appeal." *Maddox v. Aldridge Pite, LLP*, 2024 WL 1475463, at *3 (11th Cir. Apr. 5, 2024). Applying this forfeiture rule is eminently appropriate since Defendants raised this issue in each of their

motions to dismiss (Doc. 31 at 9; Doc. 43 at 9; Doc. 66 at 9), resulting in Plaintiffs amending their complaint three times without claiming anything remotely like what they now include in their brief on appeal.[5]

Lastly, Plaintiffs' discussion of the "fairness factors" (Open. Br. 34) that also must be met for specific personal jurisdiction to exist are beside the point.  In the Eleventh Circuit, courts "evaluate whether the defendant has minimum contacts" and only continue to the reasonableness factors if personal jurisdiction is not already found lacking.  *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 2023 WL 2632813, at *10 n.8 (S.D. Ga. Mar. 24,

---

[5] Because Plaintiffs' claims do not arise out of any of Atlas's alleged contacts with Florida, the cases they invoke where a court did find specific jurisdiction are of no help.  *Licciardello*, 544 F.3d 1280, held that the defendant's alleged violation of a Florida resident's trademark on a website accessible in Florida satisfied due process.  The court reasoned that a defendant who commits an intentional tort like libel or trademark infringement should know that the "brunt of the harm" will be suffered where the plaintiff resides.  *Id*. at 1285-88.  In this case, by contrast, the District Court found a lack of personal jurisdiction over Plaintiffs who do *not* live or work in Florida.  Plaintiffs' argument that Atlas's facilities in Florida are a stronger nexus than a website accessible in Florida is irrelevant for Plaintiffs who do not live in Florida.  In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the plaintiff alleged injury where the libelous magazines were distributed, including in New Hampshire, where she brought suit.  The Supreme Court agreed, holding that "New Hampshire has a significant interest in redressing injuries that actually occur within the State."  *Id*. at 776. Here, Plaintiffs do not allege that their claims are premised on any injuries occurring in Florida.

2023); *see also Pettaway v. Equifax Info. Servs., LLC*, 2020 WL 10229077, at *8 (N.D. Ga. Aug. 7, 2020) ("Because this Court has determined that there are not sufficient minimum contacts to justify the exercise of personal jurisdiction, it is presumed that it would be unfair to force Platinum to litigate in a Georgia forum."), *R&R adopted*, 2020 WL 10229093 (N.D. Ga. Aug. 24, 2020).

## C.    The District Court did not abuse its discretion in refusing to grant discovery or an evidentiary hearing on jurisdiction.

Finally, Plaintiffs argue on appeal that the District Court denied them an evidentiary hearing or discovery into personal jurisdiction.  But Plaintiffs never moved for such relief, and the District Court did not abuse its discretion by not ordering it *sua sponte*.

As for a hearing, Plaintiffs do not cite any case holding that a district court must hold an evidentiary hearing on personal jurisdiction.  Instead, this Court recognizes that district courts have discretion to choose between the "options" of holding a hearing or deciding the motion under a prima facie standard.  *N. Am. Sugar Indus., Inc.*, 124 F.4th at 1333.

As for discovery, this Court has held that a plaintiff has a "qualified right to jurisdictional discovery" *if* the facts relevant to jurisdiction are

24

"genuinely in dispute" *and* the plaintiff has not "unduly delayed in propounding discovery or seeking leave to initiate discovery." *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017). Plaintiffs fail both prongs of that test.

First, there was no genuine dispute as to any relevant jurisdictional facts presented below. The parties agreed that Atlas is incorporated in Delaware and headquartered in New York. Doc. 63 (SAC) ¶ 16. They also agreed that Atlas maintains a training center in Miami; indeed, Atlas submitted a declaration describing that facility. Doc. 66-2 (Ybarra Decl.) ¶¶ 6-9. Plaintiffs submitted a declaration characterizing the MTC as a "large and vital center," but without contradicting any specific fact or statistic offered by Atlas. Doc. 69-1 (South Decl.) at 3. Plaintiffs say there is a "factual dispute," but they fail to identify one. Open. Br. 37.[6]

---

[6] Plaintiffs' case law (Open. Br. 37-39) provides no support for jurisdictional discovery. Instead, once again, they mischaracterize the cited authorities. *Snow*, 450 F.3d at 1317-1319, *did not* hold that plaintiffs were entitled to jurisdictional discovery and, instead, *affirmed* dismissal for lack of personal jurisdiction. *Posner v. Essex Insurance Co.*, 178 F.3d 1209 (11th Cir. 1999) (per curiam), *rejected* Plaintiffs' argument that they had "a right to jurisdictional discovery." *Id.* at 1214 n.7. *United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009), similarly *rejected* the plaintiff's argument that it was entitled to jurisdictional discovery and *affirmed* the dismissal of a party

*Second*, the District Court did not err for the independent reason that Plaintiffs never sought jurisdictional discovery. This Court has held that a court is well within its discretion to deny jurisdictional discovery when the requesting party "never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs as a proposed alternative to dismissing." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009); *see Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (per curiam) ("Here, no discovery efforts were made in the eight months between the time Plaintiffs filed the complaint and the time it was dismissed."). That is exactly what Plaintiffs did here: they never made a motion for discovery or sought to lift the stay on discovery during the pendency of the motion to dismiss to propound jurisdictional discovery, and they made their request in a single sentence in their opposition to Defendants' motion to dismiss. Doc. 69 at 10.

---

for lack of personal jurisdiction. *Id.* at 1274-83. And *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843 (11th Cir. 1988), does not mention either contested jurisdictional facts or jurisdictional discovery.

26

## II.    THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAILED TO STATE A CLAIM FOR INVASION OF PRIVACY.

Plaintiffs asserted that Atlas invaded their privacy by requiring that unvaccinated employees wear face masks, which the complaint characterizes as "useless" "political symbols" that allegedly revealed Plaintiffs' unvaccinated status to "other employees and consumers."  Doc. 63 (SAC) ¶¶ 5, 7, 78, 95.  Plaintiffs also allege that "Atlas and FSI disseminated the [vaccine] status of every Plaintiff in emails" to unspecified coworkers.  *Id.* ¶¶ 65, 81, 95.  The District Court correctly dismissed this claim.

Under Florida law, the elements of the tort of invasion of privacy are: (1) the publication (2) of private facts (3) that are offensive and (4) are not of public concern.  *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 725 (11th Cir. 2011) (per curiam) (citing *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989)).  Assuming *arguendo* that Plaintiffs' vaccination status is a private fact, Plaintiffs failed to allege the other three elements.

First, the SAC fails to allege any "publication" of facts about Plaintiffs. Under Florida law, to constitute publication, "[t]he publicity given to private facts must be to the public at large or to so many persons that the matter

27

must be regarded as substantially certain to become public knowledge." *Regions Bank v. Kaplan*, 2021 WL 4852268, at *13 (11th Cir. Oct. 19, 2021) (quoting *Williams v. City of Minneola*, 575 So. 2d 683, 389 (Fla. Dist. Ct. App. 1991)). Information is not public when it is "restricted to limited membership," even when that membership is large. *Id.* For instance, in *Regions Bank*, this Court held that information stored on an online database accessible to banks, credit unions, and law enforcement agencies was not accessible "to the public at large." *Id.*

Here, as the District Court observed, the SAC does not allege "how many employees at Atlas Air" received information about Plaintiffs by email (Doc. 73 at 11). On appeal, Plaintiffs claim that the email was sent to "over 4,000 employees across [Atlas's] workforce." Open. Br. 40. But that fact does not appear anywhere in the SAC.

Furthermore, even if such an email were sent to all employees, it would not matter. As the District Court held, under *Regions Bank*, "publication within Atlas Air is not a disclosure to the public at large or a disclosure that is substantially certain to become public knowledge." *Id.* Plaintiffs respond by citing precedent that is misstated at best. Plaintiffs claim that the sharing in *Regions Bank* was with just a "handful of

28

individuals" (Open. Br. 41), but the opinion never says that; instead, it makes clear that the database was accessible to many organizations. 2021 WL 4852268, at *13. Plaintiffs also cite *Harms v. Miami Daily News, Inc.*, 127 So. 2d 715 (Fla. 3d DCA 1961), but that involved dissemination to the entire public in a newspaper article, and bears no resemblance to the alleged intra-company emails here. *Id.* at 716. Plaintiffs also cite *Doe v. Roe,* 638 So. 2d 87, 88 (Fla. 4th DCA 1994); *Spilfogel v. Fox Broadcasting Co.,* 792 So. 2d 1254 (Fla. 4th DCA 2001); *Doe v. University of Miami*, 2020 WL 7647634 (S.D. Fla. Dec. 23, 2020); and *Jewell v. New York Life Insurance Co.*, 2018 WL 1792348, at *4 (M.D. Fla. Apr. 16, 2018) in support of their argument (Opp. 41-42), but Atlas cannot locate these cases. *Supra* p. 13.[7]

The District Court also rightly concluded—as a matter of straightforward logic—that wearing a face mask does not disclose an individual's vaccination status, because vaccinated individuals *also* wear face masks for "the added facial protection," so there is no way to tell who

---

[7] For some of these citations, Atlas was able to locate similarly named cases. But the decision in *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 726 (11th Cir. 2011), is not from the same court and addressed the "offensiveness" element, not the "publication" element. The decision in *Doe v. Univ. of Miami*, 446 F. Supp. 3d 1000 (S.D. Fla. 2020), does not address invasion of privacy at all.

29

is vaccinated just from a face mask. *Id.* (quoting *Leake v. Raytheon Techs. Corp.*, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023)); *see Sharikov v. Philips Med. Sys. MR, Inc.*, 2023 WL 2390360, at *17 (N.D.N.Y. Mar. 7, 2023) (same). Plaintiffs have no response on appeal.

Second, Plaintiffs' invasion-of-privacy claim fails for the independent reason that their vaccination status is not an "offensive" fact, as Defendants argued below (Doc. 66 at 21-22). To meet that element, disclosure of the fact must be "highly offensive to a reasonable person." *Cape Publ'ns*, 549 So. 2d at 1377. Plaintiffs' complaint included only the conclusory allegation that publication was offensive. Doc. 63 (SAC) ¶ 96. That was insufficient. A "highly offensive" fact "will generally either portray that plaintiff negatively or attack his conduct or character." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1109 (Fla. 2008) (citation omitted). Plaintiffs entirely failed to allege that being unvaccinated would cause a reasonable person to view Plaintiffs' conduct or character negatively. Indeed, Plaintiffs plead the opposite: they contend that COVID-19 vaccines are ineffective and immoral and that "millions of people around the world" share their beliefs. Doc. 63 (SAC) ¶¶ 26, 39, 49. Plaintiffs cannot plausibly contend that being unvaccinated is widely popular and morally correct while, at the same time, highly

30

offensive.  Plaintiffs claim that *Lofton v. Kravitz*, 672 So. 2d 591, 593 (Fla. 4th DCA 1996), holds that disclosure to coworkers is offensive, but Atlas cannot locate any such decision.  *Supra* p. 13.

Nor is it sufficient simply to point out that vaccination status is a "medical" fact.  Publication of medical records can be offensive, but it is not "necessarily" so, depending on the "nature" of the records.  *Post-Newsweek Stations Orlando, Inc. v. Guetzloe*, 968 So. 2d 608, 613 (Fla. Dist. Ct. App. 2007). Here, the alleged information at issue is the simple fact of vaccination, not any detailed or invasive publication of medical history or condition. Common sense dictates that the mere fact of vaccination is not "highly offensive to a reasonable person."  Indeed, it is breathtaking for Plaintiffs to claim that alleged publication of their vaccination status within Atlas was highly offensive when they have set out in precise detail their names and vaccination status in a public, unredacted federal complaint.  Doc. 63 (SAC) ¶¶ 12-15.  Plaintiffs argue on appeal that publication was offensive because some pilots were unable to bid on flights to certain destinations.  Open. Br. 43; Doc. 63 (SAC) ¶ 81.  But that allegation has nothing to do with whether a reasonable person would find the fact offensive.  Plaintiffs also failed to raise that argument below (*see* Doc. 69 at 13) and therefore abandoned it.  *See*

31

*Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000).

Third, as Defendants explained below (Doc. 66 at 22), Plaintiffs' invasion-of-privacy claim fails for the additional, independent reason that their vaccination status was of sufficient "public concern" for the context in which it was allegedly published. Even when information is private, "[t]he right of privacy does not prohibit the publication of matter which is of legitimate public or general interest." *Cape Publ'ns*, 549 So. 2d at 1377 (citation omitted). This final element "is a formidable obstacle." *Id.* Furthermore, the "context" and scope of the publication matters when assessing the public interest. *See Regions Bank*, 2021 WL 4852268, at *13 (general publication of social security number might not be in public interest but publication "in the context of preventing bank fraud through limited disclosure" on anti-fraud database was justifiable).

Here, Plaintiffs' conclusory assertion that their vaccination status "is of no legitimate public concern" (SAC ¶¶ 96, 174) is a legal conclusion that the Court need not accept. *See Iqbal*, 556 U.S. at 678. The assertion is also incorrect. An individual's vaccination status—and the accompanying risk of increased severity and spread of COVID-19—is a quintessential example

32

of "information that is of public benefit." *Cape Publ'ns*, 549 So. 2d at 1378

(citation omitted).    Indeed, Florida courts have found far less socially

valuable information to fall under the broad umbrella of public concern. *See,*

*e.g.*, *Parker v. Town of Palm Beach*, 2017 WL 11537901, at *6 (S.D. Fla. Aug. 16,

2017) (holding that photographs of inside of plaintiff's apartment showing

unlawful renovations was matter of public concern).

## III. THE DISTRICT COURT CORRECTLY CONCLUDED THAT PLAINTIFFS FAILED TO STATE A TITLE VII CLAIM FOR HOSTILE WORK ENVIRONMENT.

A.    Plaintiffs allege that Atlas created a hostile work environment in

violation of Title VII, 42 U.S.C. § 2000e *et seq.*   Doc. 63 (SAC) ¶ 98.[8]   To

establish a claim of hostile-environment based on harassment, an employee

must show:  (1) that he or she belongs to a protected group, (2) that the

employee has been subject to unwelcome harassment, (3) that the

harassment was based on the protected characteristic, (4) that the

harassment was sufficiently severe or pervasive to alter the terms and

conditions of employment and create a discriminatorily abusive working

---

[8] Plaintiffs included other claims under Title VII in prior versions of the complaint (*i.e.*, reasonable accommodation and disparate treatment) but dropped them from the SAC.  Thus, they are forfeited and not at issue here.

33

environment; and (5) a basis for holding the employer liable. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1292-93 (11th Cir. 2002).

***Title VII Does Not Protect Vaccination Status.*** The District Court correctly concluded that Plaintiffs' allegations as to the third and fourth elements fall short. Doc. 73 at 12. As for the third element, the SAC fails to allege that Plaintiffs were treated worse because of their *religious beliefs*, as opposed to their *vaccination status*. Indeed, the SAC affirmatively refutes that possibility by alleging that the 13 Plaintiffs who hold the same religious beliefs but *were* vaccinated were "favored" relative to unvaccinated Plaintiffs; "reward[ed]" with "less restrictions"; and "released from under the discriminatory practices." Doc. 63 (SAC) ¶¶ 13, 110(xi), 112, 117.[9] Nor does the SAC allege that Atlas treated Plaintiffs who were unvaccinated due

---

[9] Indeed, the SAC alleges that "Atlas's policies are only targeted at Atlas Plaintiffs Categories 1&3" (SAC ¶ 123), defined as Atlas pilots and ground staff who refused the COVID-19 vaccination (*id.* ¶¶ 12, 14). By contrast, "Atlas Category 2 Plaintiffs" who had the same religious beliefs as the Plaintiffs in Categories 1 & 3, but were vaccinated, "were released from under the discriminatory practices." *Id.* ¶ 113; *see also* SAC ¶ 65 ("Category 1 unvaccinated Atlas pilots and Category 4 FSI flight attendants received less flight opportunities than vaccinated ones from Atlas and FSI, respectively"). Similarly, the SAC alleges that unvaccinated Plaintiffs in "Category 1" were disallowed from bidding on certain flights, but it does not claim that vaccinated Plaintiffs in "Category 2" faced the same restriction." *Id.* ¶¶ 12, 13, 81.

34

to their religious beliefs differently than employees who were unvaccinated for other reasons. *See, e.g.*, *Anderson v. United Airlines, Inc.*, 2023 WL 5721594, at *6 (N.D. Ill. Sept. 5, 2023) (purported discrimination "based on vaccination status" does not "allege discrimination based on religion" under Title VII). When an employer "would not have tolerated" conduct regardless of a protected characteristic, "Title VII has nothing to say." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 660 (2020); *see Leake*, 2023 WL 2242857, at *6 (rejecting similar claim because "the but-for cause" of termination was not plaintiffs' religious beliefs but their "refusal to comply with the safety conditions for vaccination exempt employees").

On appeal, Plaintiffs argue for the first time that the harassment was based on religion because Atlas used Plaintiffs' vaccination status as a proxy for their religious beliefs, citing *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299 (4th Cir. 2004). That theory fails. First, it is forfeited because Plaintiffs did not argue it below. *See Coalition for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326. Second, the SAC does not plead any facts in support of that new proxy theory, and Plaintiffs do not contend otherwise. And third, *Shliehsabou* — which Plaintiffs gravely mischaracterize — did not establish precedent for that theory. That decision

35

concerned overtime pay under the Fair Labor Standards Act, not discrimination under Title VII. *See* 363 F.3d at 304.

*No Severe or Pervasive Conduct Based on Religion.* As for the fourth element—that any harassment was severe or pervasive enough to alter the terms and conditions of plaintiffs' employment—although the SAC uses conclusory terms like "harassment" and "discrimination" dozens of times, it does not include a single concrete example of harassment of any Plaintiff for their religious beliefs. On appeal, Plaintiffs argue that some Plaintiffs were subject to unwelcome comments, but they do not say which Plaintiffs or which comments allegedly were made to each of them. A careful reading of the brief shows that the Plaintiffs mentioned in it ("Robert Bellman and Gregory Berry") are merely *examples* of Plaintiffs who may have heard comments, and the only specific comment mentioned in the brief ("Anti-Vaxxer") is similarly an *example* of what Plaintiffs might have heard. Open. Br. 46. Although the SAC uses the term "Anti-Vaxxer" twice (¶¶ 120, 198), it never alleges that anyone directed that term at any Plaintiff. Plaintiffs also allege that unvaccinated Plaintiffs were unable to bid on flights to certain destinations, but the SAC does not specify a single Plaintiff whose bid was denied or allege that this policy was carried out in a threatening or

36

humiliating manner. Doc. 63 (SAC) ¶ 81. This is plainly insufficient. *See Hall v. Dekalb Cnty. Gov't*, 503 F. App'x 781, 791 (11th Cir. 2013) (per curiam) (faulting complaint for "fail[ing] to allege a single specific instance of racially harassing conduct in the workplace"); *see also Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (explaining that the Court considers frequency, severity, physical threats or humiliation, and interference with job performance). And, regardless, none of these examples could sustain a harassment claim based on religion—even if they were severe or pervasive— because, for the reasons already discussed, they solely pertain to *vaccination status*, which is not a protected category under Title VII.

The only individual out of the 89 Plaintiffs with *any* relevant specifics is pilot James Villella, who submitted a declaration in opposition to Defendants' motion to dismiss. Doc. 69-1, Ex. 3. In it, Villella claimed he was subject to a disciplinary hearing after he failed to comply with Atlas's COVID-19 testing policy. *Id.* By his own admission, however, the hearing did not result in any discipline, and Atlas accommodated Villella's religious objection to COVID testing by reassigning him to a desk job for three months. *Id.* As the District Court correctly held, the initiation of disciplinary procedures in response to an admitted breach of company policy—which

37

was neither threatening nor abusive nor resulted in discipline—cannot be the kind of humiliating environment "that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

**B.** Even if Plaintiffs had alleged a cognizable claim under Title VII, the dismissal of nearly half of the Plaintiffs' claims can properly be affirmed on the alternative ground that those Plaintiffs failed to exhaust administrative remedies. *See* Doc. 66 (Mot. to Dismiss) at 22. Under Title VII, a plaintiff may not bring a lawsuit without first (i) filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and (ii) receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(b), (e), (f); *Cornett v. Alabama Dep't of Transportation*, 828 F. App'x 565, 567 (11th Cir. 2020) (per curiam) (affirming dismissal of Title VII claim based on failure to exhaust).

Here, although Plaintiffs included a conclusory allegation in the SAC that they had exhausted their administrative remedies, they admitted elsewhere in the pleading that only "most" of the Plaintiffs had merely filed charges with the EEOC. Doc. 63 (SAC) ¶¶ 128, 206. After Defendants pressed the issue, Plaintiffs admitted that approximately half of Plaintiffs either had not filed a charge or had not received a right-to-sue letter. Doc.

38

69-1 (South Decl.) at 4-6.  Atlas agreed that it had no record of any right-to-sue letter from the EEOC for 40 of those Plaintiffs.  Doc. 70-1 (Reply Ex. A) at 1-2.  Based on those undisputed facts, the Court may alternatively affirm dismissal of the Title VII claims of those 40 Plaintiffs for failure to exhaust administrative remedies.

## IV.    THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAILED TO STATE A CLAIM FOR VIOLATION OF THEIR CONSTITUTIONAL RIGHTS.

Plaintiffs allege that, by implementing a policy requiring vaccination, Atlas violated the U.S. Constitution and is therefore liable under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  The District Court correctly recognized that Plaintiffs need a cause of action for their constitutional claims and that they cannot assert either cause of action against Atlas, a private employer.  Doc. 73 at 13-14.  Nor, in any case, would Atlas's policy be unconstitutional.

### A.    No cause of action under Section 1983 or *Bivens*.

To assert a constitutional claim under Section 1983, the defendant must be acting "under color" of state law, meaning that the defendant must "fairly be said to be a state actor."  *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).  On appeal, as below, Plaintiffs do not make any attempt to argue

39

how Atlas was acting under color of *state* law. Instead, they argue exclusively that Atlas was acting in concert with the *federal* government, by following the directive in Executive Order 14042 requiring that employees of federal contractors become vaccinated. But "Section 1983 does not apply to federal actors acting under color of federal law." *Hindman v. Healy*, 278 F. App'x 893, 895 (11th Cir. 2008) (per curiam). "Actions on behalf of the *federal government* might make one a *federal actor*" yet "Section 1983 addresses only *state action*." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696–97 (7th Cir. 2017) (emphasis added). This principle led the Sixth Circuit to conclude in a similar COVID case against a private employer that "§ 1983 has no role to play." *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023).

*Bivens* liability, the federal equivalent of § 1983, categorically does not extend to private corporations. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 n.2 (2001); *see Ciraci*, 62 F.4th at 287 ("the Supreme Court has rejected *Bivens* claims 'against private corporations acting under color of federal law'"); *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1291 (11th Cir. 2012) (same), *abrogated on other grounds by EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). Atlas is a private corporation (Doc. 63 (SAC)

¶ 16), so no *Bivens* claim may be asserted against it, as the District Court correctly found.  Doc. 73 at 13-14.[10]

## B.    No constitutional violation, in any event.

Furthermore, Plaintiffs fail to plausibly allege any violation of their constitutional rights, as Defendants asserted below (Doc. 66 at 30-31).  The Supreme Court long ago rejected the argument that mandatory vaccination during an epidemic violates the Constitution.  *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *see Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (holding, under *Jacobson*, that university vaccination policy did not violation Constitution); *Doe #1-#14 v. Austin*, 572 F. Supp. 3d 1224, 1239 (N.D. Fla. 2021) (same, for military vaccination policy); *see also Florida v. HHS*, 19 F.4th 1271, 1288 (11th Cir. 2021) ("mandatory vaccinations for the public at large have long been held valid").  Plaintiffs' only response is that *Jacobson*

---

[10] Even if the Court could extend *Bivens* liability to a private party, extending liability in a "new *Bivens* context" is a "disfavored judicial activity," and a court should refuse to do so if there is "*any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert v. Boule*, 596 U.S. 482, 491-92, 496 (2022) (citations omitted).  Here, given the complex public policy and health considerations at stake, there are many rational reasons to think that Congress, not the courts, should decide if to establish a cause of action to pursue constitutional claims involving COVID.

41

involved "fines," rather than "private coercion." Open. Br. 51. But Plaintiffs do not attempt to explain how this distinction makes a difference, and they ignore that the defendant in *Jacobson* faced a "criminal complaint" and was "committed" to prison until he paid. 197 U.S. at 13-14. In any case, the Supreme Court has upheld other types of vaccination mandates. *See Zucht v. King*, 260 U.S. 174, 176 (1922) (upholding ordinance excluding unvaccinated children from public school).

Relatedly, and more broadly, Plaintiffs never identify a fundamental right at issue. Any "unenumerated right [must] be 'deeply rooted in this Nation's history and tradition'" to be recognized. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 260 (2022) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997)). Under this exacting historical test, Plaintiffs have not even attempted to show that there is a fundamental right to avoid vaccination or masking at work. *See, e.g., Kheriaty v. Regents of the Univ. of Cal.*, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022) (no "appropriate historical example to establish a 'fundamental right' to be free from a vaccine mandate at a workplace"); *see Norris v. Stanley*, 73 F.4th 431, 437 (6th Cir.

42

2023) (same).[11]  Nor do Plaintiffs attempt to show that there is a fundamental right against disclosure of their vaccination status or entitling them to access to the same job duties as vaccinated coworkers.

Because Plaintiffs lack a fundamental right, Atlas's policy is subject to a rational-basis review, meaning that it must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Estate of McCall ex rel. McCall v. United States*, 642 F.3d 944, 950 (11th Cir. 2011).  Atlas's vaccination policy easily satisfies that test.  *See Henry v. DeSantis*, 461 F. Supp. 3d 1244, 1255 (S.D. Fla. 2020) (interest in "public health and slowing the spread of COVID-19" provided rational basis for Governor's "safer at home" order).

---

[11] *See also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021) (rejecting injunction on the ground that plaintiffs did not show that vaccine mandate "violates [allegedly] fundamental rights to privacy, medical freedom, and bodily autonomy under the Fourteenth Amendment").  Plaintiffs' citation of *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990) (Open. Br. 51) is no help, either.  *Cruzan* merely "assumed that the Constitution granted competent persons a 'constitutionally protected right to refuse lifesaving hydration and nutrition.'"  *Glucksberg*, 521 U.S. at 273 (quoting *Cruzan*, 497 U.S. at 279).

**V.    THE DISTRICT COURT PROPERLY HELD THAT PLAINTIFFS FAILED TO STATE A CLAIM FOR INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

Plaintiffs allege that Atlas is liable for intentional infliction of emotional distress (IIED) or, in the alternative, negligent infliction of emotional distress (NIED).  Doc. 63 (SAC) ¶ 153.  The District Court correctly dismissed this claim after Plaintiffs failed to respond to several deficiencies that Defendants identified in their motion to dismiss.  Plaintiffs cannot overcome those deficiencies here.

Defendants argued below that Plaintiffs failed to state a claim for IIED because (1) Defendants' alleged conduct was not "outrageous" as a matter of law, (2) Plaintiffs failed to allege that Defendants inflicted suffering intentionally, and (3) Plaintiffs failed to allege severe suffering.  Doc. 66 at 35-37.  Plaintiffs also failed to state a claim for NIED because Plaintiffs failed to allege either that they suffered any "physical impact" or that their claim involved witnessing death or injury of a relative.  *Id.*at 37-38.  Plaintiffs' response to Defendants' arguments comprised a single paragraph, without any citation of authority, concluding that Defendants' conduct was, in their opinion, sufficiently "outrageous."  Doc. 69 at 19.

As the District Court correctly held, Plaintiffs "forfeited" their infliction-of-distress claim by offering such a threadbare response. Doc. 73 at 14. A party's "failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned." *Coalition for the Abolition of Marijuana Prohibition*, 219 F.3d at 1326; *see Parke v. Delta Air Lines, Inc.*, 2025 WL 487806, at *3 (M.D. Fla. Feb. 13, 2025) ("Plaintiff responds to each argument in cursory fashion and with essentially no citation to factual or legal authority. … The court grants the motion to dismiss on this basis.") (citing *United States v. Harding*, 104 F.4th 1291, 1300 (11th Cir. 2024)).

On appeal, Plaintiffs do not mention or contest the District Court's holding that they abandoned the claim. Open. Br. 51-53. They have therefore forfeited any argument in this Court that the District Court erred in this conclusion, and this Court should affirm on that basis alone.

Even if Plaintiffs had not abandoned the claim below, Plaintiffs failed to state a plausible claim for IIED or NIED for multiple reasons. First, conduct must be "so outrageous in character" as to be "utterly intolerable in a civilized community." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). This is "an extremely high burden" under Florida law. *Brown v. Royal*

45

*Carib. Cruises, Ltd.*, 2017 WL 3773709, at *3 (S.D. Fla. Mar. 17, 2017).  Here, the complaint asserts that Defendants mandated vaccines (or masking and testing) in line with federal mandates and CDC guidance, and conditioned employment on compliance with company policy.  SAC ¶¶ 28-35, 60-85. Complying with health and safety laws and guidance is objectively *reasonable*, not *unreasonable*.  *See Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1183–84 (S.D. Fla. 2021) (noting the legitimacy of following CDC guidance); *Finkbeiner v. Geisinger Clinic*, 2022 WL 3702004, at *7 (M.D. Penn. Aug. 26, 2022) (dismissing IIED claim because "it is not extreme and outrageous for [an employer] to present employees with the choice of a [COVID-19] jab, a swab, or their job").  Plaintiffs disagree, citing a string of authorities purportedly relevant to "outrageous" conduct, but they make no effort to explain how the facts or holdings of those cases compare to this case. Open. Br. 52.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments."). Nor could they.

Second, for IIED, Plaintiffs failed to allege that Atlas "intentionally" inflicted distress, meaning "that severe distress [was] certain, or substantially certain to result." *Hart v. United States*, 894 F.2d 1539, 1548 (11th

46

Cir. 1990).  Plaintiffs fail to allege, for instance, that Atlas had reason to doubt the safety of COVID-19 vaccines, given that they were approved by the FDA. Doc. 63 (SAC) ¶ 60.  On appeal, Plaintiffs argue only that Defendants' "conduct" in general was "intentional," such as their threats to terminate unvaccinated employees.  Open. Br. 52.  But that is not the test.  The question is whether *severe distress* was the *certain result*.

Third, Plaintiffs failed to allege that their distress was severe, as both IIED and NIED claims require.  Indeed, the SAC does not contain allegations about any distress suffered by any specific Plaintiff.  At best, the SAC contains a parenthetical list of example symptoms that Plaintiffs may have suffered and wish to recover for, including "headache, tremors, anxiety" etc. SAC ¶¶ 162, 239.  That is insufficient.  *See Negron v. CitiMortgage Inc.*, 2016 WL 10953267, at *12 (S.D. Fla. Oct. 19, 2016) (sleeplessness, irritability, and fear of losing home not sufficient).  On appeal, Plaintiffs attempt to defend that list, citing *Koutsouradis v. Delta Air Lines, Inc.*, 427 So. 2d 1105, 1107 (Fla. 3d DCA 1983), but Atlas has been able to verify that decision.  *Supra* p. 13.[12]

---

[12] Atlas did locate a case with the same caption, decided twenty years later by a different court.  *See Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339 (11th Cir. 2005) (per curiam).  That case does not support Plaintiffs'

47

Finally, Plaintiffs failed to allege NIED because they lack allegations stemming (1) from "physical impact" of Defendants' allegedly negligent acts or (2) from "witnessing the death or injury of a loved one."  *Zell v. Meek*, 665 So. 2d 1048, 1050 (Fla. 1995).  On appeal, Plaintiffs claim without authority that any "symptoms" suffered qualify as "impact."  Open. Br. 53.  That is precisely backward.  In this context, "impact" means "direct physical contact," consistent with its ordinary meaning.  *Zell*, 665 So. 2d at 1052.

## VI.    THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAILED TO STATE A CLAIM FOR NEGLIGENCE.

Plaintiffs allege that Atlas negligently injured them by disclosing their vaccination status, both by publishing their vaccination status and mandating masks for unvaccinated employees.  Doc. 63 (SAC) ¶ 163.  The District Court recognized that this claim was a repackaging of their invasion-of-privacy claim and dismissed it, both because Plaintiffs failed to state an invasion-of-privacy claim in the first instance and because Florida law does not recognize "negligent" invasion of privacy.  Doc. 73 at 14-15.  The District Court was correct:  "Florida courts routinely dismiss invasion-of-privacy

---

argument that their list of example symptoms is sufficient to allege severe distress.

claims where a plaintiff fails to allege that a defendant 'intentionally divulged his [private information].'" *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1225 (S.D. Fla. 2022) (citation omitted); *see Carlisi v. Sprintcom, Inc.*, 2006 WL 8432613, at *2 (S.D. Fla. Sept. 6, 2006) (allegation that defendant "negligently maintained its records" is "insufficient to state a claim for the intentional tort of invasion of privacy").

On appeal, Plaintiffs offer a series of cases that purport to contradict the District Court's holding, but none do. *See* Open. Br. 53-54. The decision in *Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002), concerned whether to relax the impact rule for negligent infliction of emotional distress in the "limited" context of the statutory duty of confidentiality owed by a psychotherapist to a patient. *Id.* at 350. Plaintiffs do not claim there is any equivalent statutory scheme here. The decision in *Clay Electric Cooperative, Inc. v. Johnson*, 873 So. 2d 1182 (Fla. 2003), concerning alleged negligent maintenance of streetlights, says nothing about "employer duties." Finally, Plaintiffs offer no explanation of how their citations of *McCain v. Florida Power Corp.*, 593 So. 2d 500 (Fla. 1992), or *Stokes v. Liberty Mutual Insurance Co.*, 213 So. 2d 695 (Fla. 1968), are relevant to their argument.

49

**VII.** **THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS FAILED TO STATE A CLAIM UNDER THE EMERGENCY USE AUTHORIZATION PROVISION.**

Plaintiffs' third amended complaint added a claim under the EUA, which allows the Secretary of Health and Human Services to authorize use of a medical product on an emergency basis. The provision requires, among other things, that a person to whom the product will be administered is "informed . . . of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III). Plaintiffs allege that the available COVID-19 vaccines were authorized on an emergency basis and that Atlas violated the EUA by mandating that they become vaccinated without providing them the required disclosures. Doc. 74 (TAC) ¶ 254. Plaintiffs' claim fails for multiple independent reasons.

First, as the District Court held, the EUA is a component of the Food, Drug, and Cosmetic Act ("FDCA"), and the text of the FDCA makes clear that there is no private right of action to enforce its provisions. Doc. 88 at 4-5. Under 21 U.S.C. § 337(a), with exceptions not relevant here, "all such proceedings for the enforcement, or to restrain violations, of this chapter

50

shall be by and in the name of the United States." In other words, "the FDCA says that its requirements may only be enforced by the United States government." *Markland v. Insys Therapeutics, Inc.*, 758 F. App'x 777, 779 (11th Cir. 2018). The EUA is part of "this chapter" — the FDCA spans Chapter 9 of Title 21 of the U.S. Code, sections 301 through 399i. Therefore, Plaintiffs have no right to enforce the EUA.

On appeal, Plaintiffs claim that the provision of the EUA they wish to enforce "differs" from the rest of the FDCA, but they do not offer any coherent explanation for any exception from § 337(a). Their citation of *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), only confirms the "clear evidence that Congress intended" that components of the FDCA "be enforced exclusively by the Federal Government." *Id.* at 352. And the test for implied causes of action under *Cort v. Ash*, 422 U.S. 66 (1975), plainly does not apply where Congress has already "expressly" rejected one. *Id.* at 78.

Plaintiffs also point to *Doe v. Rumsfeld*, 2005 WL 1124589 (D.D.C. Apr. 6, 2005). In that unpublished order, the district court modified its injunction of the military's anthrax vaccination program, at the military's request, to allow the military to administer anthrax vaccines on a voluntary basis under

the EUA. *Id.* at *1; *see also Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003) (order on preliminary injunction). Instead, the order cites 10 U.S.C. § 1107 (involving drugs given to servicemembers), but that statute is not part of the FDCA and is not at issue here. Nothing in the *Doe* order indicates that the plaintiffs were seeking to enforce a provision of the FDCA, that plaintiffs had any right to do so, or that it supplies a cause of action to sue a private employer under the EUA.

To the contrary, the plaintiffs in *Doe* had brought their lawsuit against the federal government under the Administrative Procedures Act. *Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 3 (D.D.C. 2004). *Doe* thus has no relevance here, as each court to have considered the issue has held. *See, e.g.*, *Legaretta v. Macias*, 603 F. Supp. 3d 1050, 1061 (D.N.M. 2022) (rejecting reliance on *Doe* in a vaccine lawsuit against a private employer); *Anderson v. United Airlines, Inc.*, 2024 WL 1555496, at *2 (N.D. Ill. Apr. 10, 2024) (same).

Second, as Defendants explained before the District Court (Doc. 81 at 8-10), even if Plaintiffs could bring an action to enforce the EUA, they fail to state a claim here because Atlas is not a medical provider. "The EUA statute's relevant language—ensuring that individuals to whom the product is administered are informed of their option to accept or refuse the vaccine—

52

addresses the interaction between the medical provider and the person receiving the vaccine, not the interaction between an employer and an employee receiving a vaccine." *Norris*, 73 F.4th at 438; *accord, e.g., Evans v. N.Y.C. Health & Hosps. Corp.*, 2023 WL 5920189, at *8 (S.D.N.Y. Aug. 7, 2023); *Schmidt v. City of Pasadena*, 2023 WL 4291440, at *14 (C.D. Cal. Mar. 8, 2023).

Third, as Defendants also explained below, Atlas did not require Plaintiffs to take a vaccine authorized on an emergency basis. Atlas announced its vaccine policy on October 5, 2021, and required employees to report their vaccination status by November 25, 2021. Doc. 74 (TAC) ¶¶ 64, 67. But on August 23, 2021 — before either date — the FDA had already given full approval to Pfizer's vaccine. *Id.* ¶ 60. So there was no need for Plaintiffs to take a vaccine authorized only on an emergency basis. *See Legaretta*, 603 F. Supp. 3d at 1059-60 (rejecting EUA claim because by August 23, 2021, the "FDA ha[d] now given its full approval — not just emergency use authorization — to the Pfizer vaccine" for adults).

Fourth, even if Plaintiffs could overcome the preceding three hurdles, the vast majority of Plaintiffs never took a COVID-19 vaccine, so they are not persons "to whom the product [was] administered." 21 U.S.C. § 360bbb-3(e)(10(A)(ii). Only the 13 vaccinated Plaintiffs could possibly have any

injury.  Doc. 74 (TAC) ¶ 13.  The rest would need to be dismissed.  *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 847 (E.D. Va. 2022) (rejecting EUA claim since "the McArthur children remain unvaccinated").

## CONCLUSION

For these reasons, the Court should affirm the District Court's dismissal of Plaintiffs' claims for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6).

Dated:  May 12, 2025                    Respectfully submitted,

Jonathan Linas                          */s/ Alexander V. Maugeri*
JONES DAY                               Alexander V. Maugeri
110 N. Wacker Dr., Ste. 4800            *Lead Counsel*
Chicago, IL 60606                       JONES DAY
(312) 782-3939                          250 Vesey Street
jlinas@jonesday.com                     New York, NY 10281
                                        (212) 326-3880
                                        amaugeri@jonesday.com

Brett Wierenga                          Eliot Pedrosa
JONES DAY                               JONES DAY
51 Louisiana Ave NW                     600 Brickell Ave, Ste. 3300
Washington, D.C.                        Miami, FL 33131
(202) 879-3939                          (305) 714-9700
bwierenga@jonesday.com                  epedrosa@jonesday.com

*Counsel for Defendant-Appellee Atlas Air, Inc.*

55

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 11,435 words, not counting the parts of the brief excluded by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Book Antiqua font.

Dated:  May 12, 2025            */s/ Alexander V. Maugeri*
                               Alexander V. Maugeri
                               JONES DAY

                               *Counsel for Defendant-Appellee*
                               *Atlas Air, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2025, I electronically filed the foregoing

Opening Brief for Defendant-Appellant Experian Information Solutions,

Inc., using the Court's Appellate ECF system, which will automatically send

notification to counsel of record.


Dated:  May 12, 2025                  */s/ Alexander V. Maugeri*
                                      Alexander V. Maugeri
                                      JONES DAY

                                      *Counsel for Defendant-Appellee*
                                      *Atlas Air, Inc.*