**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11033
Non-Argument Calendar
_____

PATRICK AKERLUND,
MICHAEL ALZATI,
ERIC W. ANDERSON,
MICHAEL G. BALLARD, JR., et al.,

*Plaintiffs-Appellants,*

*versus*

ATLAS AIR, INC.,
FLIGHT SERVICES INTERNATIONAL, LLC,

*Defendants-Appellees,*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-23519-KMM
_____

Before ROSENBAUM, GRANT, and KIDD, Circuit Judges.

GRANT, Circuit Judge:

A group of plaintiffs, employees in the commercial aviation business, personally reject their companies' pandemic-era policies on masks, testing, and vaccination. The district court dismissed the third amended complaint for lack of personal jurisdiction and failure to state a claim, and we affirm.

The claims in this case are remarkably weak, at least as pleaded. We are more candid than usual in this assessment because the plaintiffs' counsel Anthony F. Sabatini has not been candid with us. Sabatini filed multiple briefs replete with fake and hallucinated citations. Even after being warned. "Always a bad idea." Chief Justice John G. Roberts, Jr., *2023 Year-End Report on the Federal Judiciary*, at 6 (2023). By outsourcing his legal work to an AI algorithm, Sabatini violated his ethical duties to both his clients and this Court.

## I.

Atlas Air is a commercial airline, and Flight Services International hires contractors to staff Atlas Air's flights. During the Covid-19 pandemic, both companies required employees to vaccinate against Covid-19, unless they obtained a religious or medical exemption—in which case, they had to undergo periodic testing and wear a mask on the job.

The plaintiffs say they object on religious grounds to what they perceive as "a dangerous social and medical experiment." They explain that, among other things, their "conscience prohibits

them from being inoculated with any experimental foreign substance," and that their religious rights were violated as a result of "the Biden Administration's goal of achieving universal vaccination and to unlawfully acquire [their] personal, genetic information." And in their view, the companies' accommodations for religious objectors to the vaccination requirement were unreasonable: monthly testing imposed "substantial burdens," and masks were "functionally useless" "symbols" that accomplished "nothing more than political advertising." Some plaintiffs say that they "succumbed to the pressure" and took the vaccine; others begrudgingly wore masks and tested. The complaint does not allege that anyone lost their job, but does allege that some plaintiffs were assigned to less desirable, lower-paying flights.

The plaintiffs assert that their employers' Covid-19 protocols led to a hostile work environment under Title VII; a Federal Food, Drug, and Cosmetic Act violation; a federal constitutional deprivation; a tortious invasion of privacy; a negligent disclosure of private medical information; and an infliction of emotional distress. The district court dismissed all claims against Flight Services International and some claims against Atlas Air for lack of personal jurisdiction, and the remaining claims against Atlas Air for failure to state a claim.

## II.

We review de novo a district court's dismissal of a complaint for lack of personal jurisdiction and for failure to state a claim. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir.

2015); *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc).

### III.

Federal Rule of Civil Procedure 4(k)(1)(A) offers personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  To meet that requirement, "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "A plaintiff bears the burden of establishing a prima facie case of personal jurisdiction over the non-resident defendant."  *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1315 (11th Cir. 2025).

Exercising personal jurisdiction over Flight Services International in this lawsuit would violate due process because neither general nor specific jurisdiction is available in Florida for this company.[1]

Those two concepts match their terminology.  General jurisdiction is broader, allowing a court "to hear any and all claims" against an out-of-state company when its "affiliations with the State

---

[1] We do not reach Atlas Air's personal jurisdiction arguments because it concedes that the district court may decide claims brought by employees who work in Florida.  As we explain in part IV, all claims against Atlas Air fail on the merits.

are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Though general jurisdiction allows a broad set of claims to be litigated, it is available only in relatively narrow circumstances. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation's "place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* (alterations adopted and quotation omitted). Beyond that, only in an "exceptional case" will a corporation's operations in a forum be "so substantial and of such a nature as to render the corporation at home." *Carmouche*, 789 F.3d at 1204 (quotations omitted).

Specific jurisdiction, on the other hand, "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). Specific jurisdiction attaches if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State," and there is "an affiliation between the forum and the underlying controversy." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quotation omitted).

Neither general nor specific jurisdiction is available here. To start, Flight Services International is incorporated and headquartered in Texas. The general jurisdiction inquiry ordinarily ends here. Even so, the plaintiffs insist that the company is "at home" in Florida because it sends employees to attend

"annual or biannual" training sessions in Miami.   That is not enough.   An employee's "brief presence" in the forum state "for the purpose of attending the training sessions" does not establish general jurisdiction.   *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417–18 (1984).

The plaintiffs' theory of specific jurisdiction likewise hinges on Flight Services International's training sessions in Miami.   But their claims do not "arise out of or relate to" these sessions.   *Ford Motor Co.*, 592 U.S. at 359 (quotation omitted).   The plaintiffs do not so much as allege that any one of them ever traveled to Florida to attend those training sessions while the vaccination requirement was in place.   Nor do they contend that anyone was barred from attending those sessions because of their vaccination status.   To the extent any plaintiff was aggrieved, it was not in Florida.[2]

The district court was correct that it lacked personal jurisdiction over Flight Services International.

## IV.

We now turn to the plaintiffs' claims against Atlas Air. Because some of the plaintiffs work in the airline's Florida facilities, the district court had jurisdiction over at least those employees' claims.   But none are plausible.

---

[2] Because the plaintiffs fail to establish a prima facie case for personal jurisdiction, they are not entitled to jurisdictional discovery.   *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009).

## A.

The plaintiffs first allege that Atlas Air created a work environment hostile to their religious beliefs, in violation of Title VII. They say that Atlas Air's "repeated attempts to coerce" them into getting vaccinated constituted "unwelcomed harassment."

To prevail on this claim, "the plaintiff is required to prove that the defendant had a discriminatory intent or motive." *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988). But the plaintiffs do not allege any facts indicating that Atlas Air intended to discriminate against their religious beliefs. In fact, the allegations suggest the opposite. Under its policy, Atlas Air exempted from its vaccine requirement employees who professed a sincere religious objection to the Covid-19 vaccine. Instead, they had to wear a mask at work and test once a month.

The plaintiffs now seem to assert that these accommodations are also hostile to their religion. The problem with this argument is that there is nothing to back it up in the pleadings. The plaintiffs do not allege any religious objections to masks or tests—only political and logistical ones. Masks, they say, are "functionally useless" "political symbols" that "serve no other purpose than identifying 'dissident' employees." And the plaintiffs offer no real problem with testing, other than a generalized complaint that it entails "substantial burdens." What those burdens are, and whether they are religious in nature, the plaintiffs do not say. Nor do they allege that employees who received

religious exemptions were treated any worse than those who received medical exemptions.

Whatever one makes of the plaintiffs' dislike of masks and tests, they have alleged no facts signaling animosity from Atlas Air toward their religious beliefs. The allegation that Atlas Air harbored a discriminatory motive is not only conclusory, but "wildly implausible." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008).

## B.

The plaintiffs also bring claims under the Federal Food, Drug, and Cosmetic Act, alleging that Atlas Air unlawfully required its employees to take medical products authorized for emergency use. *See* 21 U.S.C. § 360bbb-3. But they cannot sue to enforce such claims; only the federal government can bring enforcement actions under that statute. *See* 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001).

## C.

The plaintiffs also allege various constitutional harms, attempting to sue under § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Of course, § 1983 allows suits against state officers, and *Bivens*, to the limited extent it applies, is for suits against federal officers. So we need not elaborate further on why these claims against Atlas Air—a private company—fail. And even if we were to assume (though it would be a stretch to do so) that Atlas Air qualifies as a state actor because as a federal contractor it introduced its vaccine requirement to

comply with President Biden's Executive Order 14042, § 2, 86 Fed. Reg. 50985 (Sept. 9, 2021), "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Goldey v. Fields*, 606 U.S. 942, 944 (2025) (quotations omitted). We decline to make the dramatic *Bivens* extension that the plaintiffs request. *See Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

## D.

The plaintiffs also allege several state tort claims. The first is that Atlas Air tortiously invaded their privacy by disclosing private medical information—namely, vaccination status—to company administrators in charge of enforcing Covid-19 protocols. "In Florida, except in cases of physical invasion, the tort of invasion of privacy must be accompanied by publication to the public in general or to a large number of persons." *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1315 (11th Cir. 1989); *see also Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. Dist. Ct. App. 1991). And publicity "requires that a matter be made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1246 (11th Cir. 2022) (en banc) (quotation omitted). The plaintiffs do not allege sufficient facts on this score.

Indeed, their theory of publicity is even further afield than the theory we rejected in *Hunstein*. There, we explained that the defendant's disclosure of personal information to a third-party intermediary does not, by itself, satisfy publicity. *Id.* at 1247. Here,

the plaintiffs allege that Atlas Air "circulate[d] the information about which crewmembers (vaccinated or unvaccinated) would qualify for certain flights involving company imposed COVID-19 restrictions." In other words, Atlas Air disseminated employees' vaccination status *internally*—to assign shifts and rearrange work schedules based on compliance with the company's vaccination, testing, and masking rules. An internal email or memo disclosing an employee's medical information for legitimate work-related reasons does not amount to public disclosure. That information does not reach, nor is it sure to reach, the public. *Id.* The tortious invasion of privacy claims were properly dismissed.[3]

In a similar vein, the plaintiffs assert that Atlas Air negligently disclosed their private medical information to the public. But these negligence claims fail for the same reason: their medical information did not reach, nor was it sure to reach, the public.

We also reject the plaintiffs' intentional infliction of emotional distress claims. Those would require showing that Atlas Air intentionally or recklessly caused "severe emotional distress" through "extreme and outrageous conduct." *E. Airlines, Inc. v. King*, 557 So. 2d 574, 575–76 (Fla. 1990) (quoting Restatement (Second) of Torts § 46 (A.L.I. 1965)). The challenged conduct must "go

---

[3] Separately, the plaintiffs arguably assert that Atlas Air's masking rules constituted compelled disclosure of one's vaccination status. But the complaint does not plausibly allege that an employee's vaccination status could be readily inferred from the fact that she is masked.

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[4] *Id.* at 576 (quotation omitted).

Like many other employers at the time, Atlas Air required certain precautions designed to prevent the spread of Covid-19. But the fact that the plaintiffs disagree with the steps Atlas Air took does not put the airline's actions beyond all possible bounds of decency. The district court correctly dismissed the plaintiffs' intentional infliction of emotional distress claims.

## V.

Though the filings in this case were substandard in a variety of ways, we have saved the worst for last. The plaintiffs' counsel Anthony F. Sabatini's filings are riddled with citations to nonexistent, "hallucinated" cases. His opening brief relies on at least eight such cases, including one purportedly decided by this Court.[5] After the defendants identified this problem, Sabatini

---

[4] To the extent the plaintiffs allege negligent infliction of emotional distress claims, they concede that Florida law generally requires a plaintiff to allege "that the emotional stress suffered flowed from injuries sustained in an impact." *Fernander v. Bonis*, 947 So. 2d 584, 590 (Fla. Dist. Ct. App. 2007) (quotation omitted). That requirement is not satisfied here.

[5] These include *Doe v. Roe*, 638 So. 2d 87 (Fla. 4th DCA 1994); *Spilfogel v. Fox Broadcasting Co.*, 792 So. 2d 1254 (Fla. 4th DCA 2001); *Doe v. University of Miami*, 2020 WL 7647634 (S.D. Fla. Dec. 23, 2020); *Jewell v. New York Life Insurance Co.*, 2018 WL 1792348 (M.D. Fla. Apr. 16, 2018); *Lofton v. Kravitz*, 672 So. 2d 591 (Fla. 4th DCA 1996); *Tillery v. ATSI, Inc.*, 2005 WL 81628 (11th Cir. Jan. 14, 2005); *Koutsouradis v. Delta Air Lines, Inc.*, 427 So. 2d 1105 (Fla. 3d DCA 1983); *Weinstein v. City of North Bay Village*, 977 So. 2d 703 (Fla. 3d DCA 2008); *Draper*

acknowledged in his (untimely) proposed reply brief that those citations were "erroneous or unverifiable," and sought to withdraw his reliance on eight listed cases.[6] At this point, things go from bad to worse: the eight cases Sabatini "withdrew" did not match *a single one* of the eight hallucinated cases in his opening brief. And not only were they not the right cases—all eight were also hallucinated.

We are far from the first court to see lawyers uncritically rely on artificial intelligence software and submit briefs citing nonexistent cases. *See* Chief Justice John G. Roberts, Jr., *2023 Year-End Report on the Federal Judiciary*, at 5–6 (2023). The typical response when this kind of violation is identified is some version of an apology from the attorney, often with sanctions to follow. It is rare to see the kind of blatant and repeated misconduct that Sabatini has committed in this case.

The first rule of our profession is that a lawyer "shall provide competent representation to a client"—"competent" in the sense

---

*v. United Airlines, Inc.*, No. 22-cv-02985, 2023 WL 3002478 (D. Colo. Apr. 19, 2023).

[6] These are *Truong v. Waste Pro USA, Inc.*, 175 So. 3d 929 (Fla. 4th DCA 2015); *Marvin v. Dade County School Board*, 2020 WL 603633 (S.D. Fla. Feb. 7, 2020); *Morrison v. Palm Beach County School Board*, 2018 WL 6727067 (S.D. Fla. Dec. 21, 2018); *Scott v. Eglin Federal Credit Union*, 2022 WL 1558341 (N.D. Fla. May 17, 2022); *Hansen v. Florida*, 2022 WL 2980744 (M.D. Fla. July 28, 2022); *Palmer v. McDonald's Corp.*, 2022 WL 413680 (S.D. Fla. Feb. 10, 2022); *Negron v. School Board of Miami-Dade County*, 2021 WL 4948181 (S.D. Fla. Oct. 22, 2021). While *Koutsouradis v. Delta Air Lines, Inc.* appears in both filings, the reply brief attributes it to a different court.

that it requires "legal knowledge, skill, thoroughness and preparation." Model Rules of Pro. Conduct r. 1.1 (A.B.A. 1983). It goes without saying that completely outsourcing one's legal work to artificial intelligence software is not competent. *See* A.B.A. Comm. on Ethics & Pro. Resp., Formal Op. 512, at 3–4 (2024). Doing so is a dramatic violation of the client's interests.

But it does not stop there, because lawyers are also officers of the Court. We expect that when lawyers submit briefs, they give us their best view of what the law is, and how that law supports their clients. We read those briefs carefully—not just because they are the product of counsel's time, effort, and skill, but because they help us as we try to reach the right answer. All that is lost if a lawyer decides that it is not worthwhile to do the work to persuade us—if he is willing to sign his name on whatever a machine churns out without so much as checking it for accuracy. We cannot do our job the same way unless lawyers do theirs.

Whatever the merits of artificial intelligence, it is no substitute for actual intelligence. Any "use of AI requires caution and humility." Roberts, *2023 Year-End Report on the Federal Judiciary*, at 5. When lawyers rely on AI tools, there is no way to get around the obligation to verify that the software got it right, and that what it got wrong will not end up in court filings.[7] By signing his name

---

[7] AI algorithms are notorious for producing "outputs that echo users' opinions and beliefs, even when those views are incorrect." Lujain Ibrahim et al., *Training Language Models to Be Warm Can Reduce Accuracy and Increase Sycophancy*, 652 *Nature* 1159, 1162 (2026). This tendency presents a particular

14                    Opinion of the Court                    24-11033

on briefs filled with hallucinated citations—not once but twice—Sabatini violated his professional obligations, both to his clients and to this Court.  If he thinks these claims are not worth the effort, he should either tell his clients they fall short or advise them to hire another lawyer—not file obviously insufficient pleadings and briefs generated by AI tools.  In a separate order, this Court, through the Chief Judge, will refer the matter to the Committee on Lawyer Qualifications and Conduct.  *See* 11th Cir. Rules, Addendum 8, r. 2(C).

★        ★        ★

We **AFFIRM** the dismissal of the third amended complaint for lack of personal jurisdiction and failure to state a claim.

---

danger in legal filings, as one of a lawyer's chief duties is to give his clients a clear-eyed view of whether the law says what the client wants it to say.